(41 Misc. Rep. 309.)

### PEOPLE v. HORTON.

### SAME v. FRISBIE.

(Court of Special Sessions of Second Division of City of New York. August, 1903.)

1. MUNICIPAL CORPORATIONS—SMOKE ORDINANCE.

The sanitary code of the city of New York (section 134), enacted by the board of health under the provisions of the city charter, forbidding a fireman to allow smoke to escape from his locomotive, is a reasonable regulation, and does not necessarily stop any factory or the running of any railroad, or deprive any person of employment.

2. COURTS—JURISDICTION—MISDEMEANORS.

Under Laws 1901, p. 499, c. 466, § 1172, the Court of Special Sessions has exclusive jurisdiction of charges of misdemeanor committed in the city of New York.

Informations by the people against Joseph Horton and Frank B. Frisbie. Demurrers to the same overruled.

George L. Rives, Corp. Counsel (Edward H. Wilson, of counsel), for the People.

William J. Kelly, for defendants.

KEADY, J. The complainant, a police officer attached to the health department, alleges that on the 28th day of May, 1903, in the borough of Brooklyn, city of New York, county of Kings, one Joseph Horton, being the fireman in charge of locomotive 119 of the Long Island Railroad, at the foot of Sixty-Fifth street, in the borough of Brooklyn, city of New York, did cause, suffer, and allow large quantities of smoke to escape and be discharged from the above-mentioned premises, contrary to the provisions of section 134 of the sanitary code of the city of New York, promulgated pursuant to law. Then follows a copy of section 134 of the sanitary code, the last paragraph of which reads as follows:

"Nor shall any such owner, lessee, tenant, occupant, manager, engineer, fireman, or any other person cause, suffer or allow any smoke to escape or be discharged from any such building, place or premises or from any engine or locomotive used therein or thereon."

This court has heretofore held that this section of the sanitary code, as it then read, did not cover or include locomotives employed

or used on the Long Island Railroad, or the persons engaged in using them. Since that decision was made, however, the section has been amended so as to cover and include "any engine or locomotive used therein or thereon." This offense is alleged to have been committed on the 28th day of May, 1903, which was after the section was amended.

On July 8th the case was regularly called in the Court of Special Sessions in Brooklyn, and defendant, through his counsel, filed a demurrer, alleging that the facts set forth in the complaint do not constitute a crime, and do not constitute a violation of the sanitary code; that, if the provisions of the sanitary code assume to prohibit the discharge of smoke from steam locomotives, then that the provisions aforesaid are unreasonable and oppressive, and deprive this defendant of his rights and property without due process of law, and deny him the equal protection of the law—and praying that the complaint be dismissed and the defendant discharged. These questions demand and should receive the careful consideration of this court. Defendant's counsel, in an able argument, attacked the section in question, and claimed that, if strictly enforced, it would cause suffering and hardship to many persons in the community, by closing factories and throwing people out of work, and by embarrassing the Long Island Railroad in the regular transaction of its important, extensive, and legitimate business.

The legislature, in the exercise of its constitutional powers over the affairs of the state, provides by section 1172 of the charter of this city (Laws 1901, p. 499, c. 466) that the sanitary code in existence January 1, 1902, shall continue in force, and empowers the board of health to add to, alter, amend, or annul any of its provisions; authorizing the board to embrace in said sanitary code all matters and subjects to which, and so far as, the power and authority of said department of health extends, not limiting their application to health only. The Legislature, in the exercise of its constitutional authority, may confer upon the boards of health the power to enact sanitary ordinances having the force of law in the district over which their jurisdiction extends. People v. Timmerman (Sup.) 80 N. Y. Supp. 285. Acting under this authority, the board of health adopted, approved, and amended section 134 of the sanitary code. "Any violation of said code, or its amendments, shall be treated and punished as a misdemeanor." Charter (Laws 1901, p. 499, c. 466, § 1172). "Except as otherwise provided in this title, the said courts of Special Sessions of the city of New York shall have in the first instance exclusive jurisdiction to hear and determine all charges of misdemeanors committed within the city of New York, except charges of libel. Provided, however, that the same shall be tried in the county wherein such misdemeanors are charged to have been committed." Id. p. 602, § 1409, subd. 1.

The complainant alleges and charges a violation of the sanitary code, and sets forth the facts upon which it is based. How can we, under these stringent laws, do otherwise than try the case? Is the spread of great clouds of black smoke from factory chimneys and steam locomotives over and into the windows of dwelling houses in a

thickly-settled portion of the city detrimental to health, and therefore a subject that comes within the control of the board of health? If it is, that settles one important point in this controversy. The learned counsel for the people cites from Prentice on Police Powers, p. 201, a vivid description of smoke, by a judge writing on the subject, who is represented as saying:

"I cannot find authority in law for saying that a thing which fills the atmosphere, that others have a right to live in, with offensive smoke and odors, stifles the breath, produces nausea and headache, drives children from their playgrounds and men from their gardens, prevents the drying of clothes and ventilation of houses, darkens the sunlight, and converts pleasant residences into prison houses in dog days, and defiles carpets, curtains, and dinner plates with deposits of soot and dirt, is not a nuisance, even though such results are only occasional."

It is claimed that, by a strictly technical reading of the section in question, all smoke is prohibited. I do not think the board of health ever intended such a construction, nor do I know of a case in which this section has been so construed by any court or judge. It is plain to me that this section is intended to prohibit the spreading of clouds of black smoke, caused mainly by the use of soft coal, over dwelling houses, thus causing injury to property and endangering the public health. It is not intended, nor is it necessary, in my opinion, to close any factory, to stop the running of any railroad, or to deprive any person of employment, in order to remedy the evil. This section as it stands is now the law. It is the duty of this court to enforce the law, with reasonable prudence and discretion. I am therefore of the opinion that the demurrers in this case and in the case of Frank B. Frisbie should be overruled, the defendants required to plead, and a reasonable time given them to prepare for trial.

COURTNEY, P. J., and FORKER, J., concur.

Demurrers overruled, and defendants refused to plead.