THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* FRANK TATJE, Defendant.

City Magistrate's Court of New York, Borough of Queens, Municipal Term, April 28, 1953.

*Denis M. Hurley, Corporation Counsel* (*Milton Mollen* and *James J. Hurley* of counsel), for plaintiff.

*Walter D. Grant* for defendant.

SHAPIRO, M. This case involves a charge made by an inspector of the air pollution control department of the City of New York that the defendant did ''unlawfully cause, suffer and allow dense smoke to be emitted into the open air from chimney attached to boiler'' in premises under his control ''in violation of Rule 1.1.1, as adopted pursuant to Chapter 47 of the Administrative Code of the City of New York.''

At the conclusion of the trial the attorney for the defendant moved for an acquittal upon the grounds, 1, that the People failed to prove the guilt of the defendant beyond a reasonable doubt; 2, that the rule alleged to have been violated by the defendant is unreasonable and constitutes an unlawful assumption of legislative power on the part of the smoke control authorities, 3, that there is a conflict between the requirements of the sanitary code and the smoke control law, and 4, that the defendant was not served with a notice of violation.

The People's witness (the inspector) testified that he observed dense smoke being discharged from the chimney of the apartment house building in question; that the smoke was black; that it could not be seen through at the point of emission and that it continued for a period of twelve minutes. After this observation, the inspector entered the apartment house and met the defendant, who was on his way out of the cellar. He told the defendant what he had seen, ascertained that the latter was the superintendent of the building, and that he had control of the fuel-burning equipment therein. This equipment was in operation at the time. The inspector's testimony was fully corroborated by a lay witness.

The defendant categorically denied the alleged emission of dense smoke and stated that he had gone to the furnace to send up some heat.

The simple issue of fact as to whether *dense* smoke was being discharged from the stack of the premises under the control of the defendant for a period of approximately twelve minutes was established beyond all reasonable doubt. The defendant merely denied the charge, but his testimony makes it obvious that he was in no position to observe the alleged discharge of dense smoke.

This finding on the facts necessarily leads to a consideration of the points of law raised by the defendant.

The first contention made is that defendant may not be found guilty because " there is no proof that he wilfully caused the alleged smoke." The law is to the contrary.

While it is true that " the section should not be construed as applicable when the discharge of smoke is accidental or unavoidable ", and " should have a reasonable construction which would preclude a conviction for a mere accidental or occasional momentary discharge of dense smoke " (*People* v. *New York Edison Co.,* 159 App. Div. 786, 795), the prohibition of dense smoke is in the nature of a *malum prohibitum* and discharge of such smoke for a period of two or more continuous minutes, or whatever period may be specified in the statute in effect at the particular time, violates the law *without* regard to the elements of knowledge, intent of willfulness (*People* v. *Jones,* 164 App. Div. 894; *People* v. *Erickson,* 176 App. Div. 910; *People* v. *John Wanamaker,* 222 App. Div. 748; *People* v. *Staten Is. R. T. Ry. Co.,* 206 App. Div. 675; *People* v. *Brooklyn Edison Co.,* 250 App. Div. 874; *People* v. *Murray,* 174 Misc. 251; *People* v. *Consolidated Edison Co. of New York,* 116 N. Y. S. 2d 555). There is no contention in this case that the dense smoke was emitted either accidentally or unavoidably. It was the natural result of what the defendant intentionally did and was directly occasioned by his indifference or lack of care.

The next contention of the defendant is that rule 1.1.1 as adopted pursuant to chapter 47 of the Administrative Code of the City of New York is " not set forth in the local law, but is merely a rule or regulation adopted by the now extinct Bureau of Smoke Control ", and that since " this bureau was terminated in September, 1952 and a new Department of Air Pollution Control was set up ", and since " no new rules or regulations were set up by the new Air Pollution Control Department ", the rule or regulation is invalid because it is unreasonable and because it assumes legislative authority not legally delegated to it. The reasonableness of smoke control and air pollution control regulations has been sustained so many times that an extended discussion of the reason therefor is hardly necessary. (*City of Rochester* v. *Macauley-Fien Milling Co.,* 199 N. Y. 207, and cases there cited.) It may not be amiss to point out, however, that the discharge of smoke into the atmosphere of crowded urban areas has plagued the inhabitants thereof for many years (*Bowers* v. *City of Indianapolis,* 169 Ind. 105; *City of Brooklyn* v. *Nassau Elec. R. R. Co.,* 44 App. Div. 462; *City of New*

*York* v. *Johns-Manville Co.,* 89 App. Div. 449; *City of St. Louis* v. *Heizelberg Packing and Provision Co.,* 141 Mo. 375; *Harmon* v. *City of Chicago,* 110 Ill. 400), and that more than seventy-five years ago the health department of the City of New York first attempted to cope with that problem by enforcing provisions of the sanitary code adopted by the board of health looking to the elimination of such conditions.

The old section 134 of the Sanitary Code was attacked in 1902 in the case of the *Department of Health* v. *Ebling Brewing Co.* (38 Misc. 537) and although there was no device, design or equipment in existence at that time which would accomplish the absolute combustion of fuel so as to prevent the emission of smoke which that ordinance forbade, the court nevertheless refused to declare the health regulation unconstitutional, but held that it must be given a reasonable interpretation and should be interpreted to prohibit that degree of visible smoke which would be detrimental or annoying to any persons. That decision was followed in *People* v. *Horton* (41 Misc. 309) and *People* v. *Sturgis* (121 App. Div. 407).

Thereafter, the board of health of the City of New York enacted section 181 of the Sanitary Code, which prohibited the discharge of *dense* smoke, so wording the statute apparently because other States had recognized that *dense* smoke was a nuisance per se and hoping that our courts would arrive at the same conclusion.

This section, too, was attacked as unconstitutional in *People* v. *New York Edison Co.* (*supra*), and again the court refused to declare the section invalid and held that the prohibition against the discharge of *dense* smoke was reasonable.

Numerous prosecutions by the health department thereafter followed predicated upon the charge that the defendants violated the prohibition against the emission of dense smoke, and convictions, where the facts justified, uniformly followed (*People* v. *New York Steam Corp.,* 253 App. Div. 806, affd. 278 N. Y. 617, *People* v. *Brooklyn Edison Co., supra*; *People* v. *John Wanamaker, supra*; *People* v. *Staten Is. R. T. Ry. Co., supra*; *People* v. *Erickson, supra,* and *People* v. *Jones, supra*).

In recognition of a worsening of the smoke situation existing in the city of New York, the city council in 1949 enacted Local Law No. 5. In recommending its adoption, the committee on general welfare stated in its report, dated January 20, 1949: " air pollution has now become a menace to health and property. The need of * * * regulation was amply proven by the pro-

ponents of this bill, the opposition merely confining themselves to the question of cost of conformance with the regulations and not in any way disputing the need of such regulation. *The health, welfare and comfort of the City of New York as a whole requires the passage of this bill, and transcends all consideration of any cost to those who would have to comply with this local law.''* (Italics ours.) (The New York City Record, Jan. 1949, p. 524.)

The legislative finding makes manifest the necessity for and the reasonableness of the regulations in question and as the court said in *People* v. *New York Edison Co., supra* (pp. 790–791) : '' Where, as here, the subject of the regulation or restriction appears to be within the police power, and concededly very broad authority to legislate has been delegated to the local officials, and the enactment not only bears *some* relation to the public health, comfort and convenience, but manifestly was calculated to promote them, and appears to be appropriate to that end, and it cannot be said that it is in reality an arbitrary interference with private rights under the guise of protecting the public,— it is presumed to be valid and to have been enacted after due investigation, by which the discharge of such smoke was found to be preventable, which, at least, rendered the enactment proper, if it did not disclose a necessity therefor, and it cannot be declared void, unless it is clear, or by evidence becomes clear beyond any reasonable doubt, that it was not authorized by the Legislature, or that it unnecessarily and unreasonably interferes with private property rights, and places an unreasonable burden, considered in the light of the benefit to the public, on the owner.'' (Citing cases.)

The presumption is in favor of the validity of such a rule or regulation (*Fifth Ave. Coach Co.* v. *City of New York,* 194 N. Y. 19). The burden of showing unreasonableness is upon a defendant who attacks the legislation upon such a ground. The defendant having failed to come forward with any such proof and the rule not being invalid or unreasonable upon its face as a matter of law, the validity of the rule in question must be and is upheld. (*City of Rochester* v. *Macauley-Fien Milling Co., supra.*)

The next point urged by the defendant is that upon the demise of the bureau of smoke control in September, 1952, its rule 1.1.1 was not carried forward into the new department of air pollution control. This contention is clearly without merit. When the new department of air pollution control was created (Local Laws, 1952, Nos. 114, 115 of City of New York) the city council

therein provided, among other things: "The rules and regulations of the Bureau of Smoke Control in force at the time this local law takes effect are continued as the rules of the Department of Air Pollution Control until repealed or amended by the Board of Air Pollution Control."

There is no contention that the board of air pollution control ever repealed or amended rule 1.1.1.

The attempt of the defendant to claim that there is a conflict between the requirements of the air pollution control department and the health department fails of its own weight. In creating the air pollution control department, it was stated that nothing therein contained was to be construed to abridge the emergency powers of the board of health or the department of health, or any of its activities. It is argued that because the Penal Law and the rules and regulations of the board of health require a defendant to give tenants adequate and proper heat such a conflict exists between that law and the air pollution control provision. To contend, as does defendant, that furnishing heat and hot water to tenants in accordance with the requirements of the Penal Law and the board of health regulations requires the defendant to emit *dense* smoke from the fuel-burning equipment in his premises is clearly a *non-sequitur*. It has been amply demonstrated, and the city council by its legislative determination has found, that dense smoke may be substantially eliminated in the operation of fuel-burning equipment and the courts have repeatedly sustained legislation designed to effectuate that salutary purpose. There is nothing in the air pollution law, nor in its observance, which conflicts with the requirements of either the sanitary code or the Penal Law.

The last point made by the defendant is that he cannot be successfully prosecuted because no prior notice of violation was served on him. He contends that "he can be taken to court for a smoke offense only after he has ignored his violation notice." Concededly, in this case no such prior notice was given. In *Consolidated Edison Co.* v. *Murtagh* (280 App. Div. 221), the plaintiff on an agreed statement of facts sought a judgment declaring that the Magistrate's Court of the City of New York was barred from entertaining smoke control violations until and unless prior proceedings had been had before the board of air pollution control. In determining that a prosecution could be successfully instituted and maintained *in the first instance* in the Magistrate's Court of the City of New York without any prior proceedings before the board of air pollution control,

and without any prior notice being served upon the defendant, the Appellate Division stated (pp. 222–223): " This is a submitted controversy as to whether the Magistrate's Court has jurisdiction to entertain a prosecution for the discharge of dense smoke in violation of section D26–1.0 of chapter 26 of the Administrative Code of the City of New York and paragraph 1.1.1 of subdivision 1.1 of section 1 of the Rules and Regulations of the Bureau of Smoke Control. The stipulation poses the case of a proceeding brought in the Magistrate's Court without any recourse to or action by the smoke control board. It is the contention of plaintiff that the law vests the smoke control board with primary jurisdiction to hear and determine charges of smoke violations and requires resort to the administrative procedure set forth in the rules and regulations before any criminal prosecution may be commenced. The defendant contends, on the other hand, that the penal provisions of the code vest the Magistrate's Court with jurisdiction to hear and determine a charge of violation of the codes and rules in the first instance. * * * It would have been simple enough for the Legislature to have made the jurisdiction of the board primary or exclusive and to confine the jurisdiction of the Magistrate's Court if it had wished to accomplish that purpose. There is no such clear limitation of the jurisdiction of the Magistrate's Court in the law · and rationalization is hardly permitted as a substitute. Both in the law and in the regulations it is made a penal offense to violate any of the regulations. Note, it is not merely a violation of an order or decision of the board which is punishable, but a violation of any rule or regulation. On the face of the law, therefore, an emission in violation of the regulations is prosecutable without any finding or action of the board. It is our conclusion that the statutory pattern and provisions do not oust or confine the criminal jurisdiction, as plaintiff contends, and that judgment should be given for the defendants, holding that upon the submitted facts the Magistrate's Court has jurisdiction of the subject of the prosecution."

The defendant is found guilty and is directed to appear before this court for sentence on the 12th day of May, 1953.