OPINION OF THE COURT
Chief Judge Cooke.
Respondents, Chairman of the Public Service Commission, and the State Department of Public Service, appeal from orders of the Appellate Division which unanimously granted summary judgment to petitioners, employees of the commis *28 sion. The judgments declared the "Rules with respect to Personal Investments by Employees of the Public Service Commission and Public Service Department” promulgated by the chairman unconstitutional. In essence, those rules prohibit commission employees, their spouses and minor children from owning any interest in certain business concerns whose performance is related, at least in part, to companies regulated by the commission. A limited class of employees and their families are entitled to apply for an exemption from the operation of the rules.
The threshold issue presented is whether the authority to promulgate these rules was delegated to the chairman by/ the Legislature. Should that inquiry be answered in the affirmative, the remaining question is whether the exemption procedures contained in the rules articulate objective standards so that an aggrieved employee may seek meaningful judicial review of an adverse determination by the chairman.
The orders of the Appellate Division should be modified. Under the code of ethics for State officers and employees (Public Officers Law, § 74) and its enabling legislation (Executive Law, § 74), the Legislature has recognized that the task of implementing and defining the ethical considerations set forth in the statute are to be vested in the person ultimately responsible for the performance of the commission’s functions —its chairman (see Public Service Law, § 3; 48 NY Jur, Public Utilities, § 10, p 457). While it is true that an administrative agency possesses no inherent legislative power, it may constitutionally exercise its authority by promulgating rules within the boundaries of its legislative delegation. Those rules prohibiting commission employees and their families from investing in certain companies are well within the legislative delegation and are therefore valid.
However, that portion of the rules pertaining to the right of an employee to secure an exemption from their operation vests that decision in the unfettered discretion of the chairman. As presently drafted, this segment of the rules contains no criteria to guide the chairman in determining whether to grant an exemption, thereby circumventing the procedural safeguards available to those applying for an exemption through judicial review. Thus, because of the lack of guidelines any denial of an exemption by the chairman was arbitrary and capricious as a matter of law. Accordingly, the rules may not be applied, in their present form, to those *29 employees who have heretofore sought an exemption until such time as a valid exemption rule is promulgated or the chairman determines that no exemptions from the operation of the rules are warranted.
Seeking to avoid both actual conflicts of interest and the very appearance of conflicts by employees of the Public Service Commission and Department of Public Service, respondents adopted eight rules governing the personal investments of these employees and their immediate families. The rules prohibit these persons from holding any interest, direct or indirect, in five categories:[1] Rule 1, companies subject to the jurisdiction of the commission; Rule 2, out-of-State utility companies not subject to the jurisdiction of the commission; Rule 3, manufacturers and suppliers of major electric utility equipment; Rule 4, companies which sell utility fuels; and, Rule 5, suppliers and manufacturers of telephone terminal equipment or specialized communications carriers. Rule 6 authorizes any person employed by the commission before the effective date of the rules to seek an exemption from the operation of Rules 2 through 5 on behalf of himself, his spouse or unemancipated children. Rules 7 and 8 deal with enforcement and violations of Rules 1 through 5.
Following the effective date of the rules, each of the petitioners sought exemptions. Those requests were initially rejected by the secretary of the commission and then by the chairman upon administrative appeal. These article 78 proceedings ensued. In support of their contentions that the rules are invalid, petitioners argue that the Legislature has not delegated the chairman authority to regulate the outside investments of commission employees and that the promulgation of the rules constituted an administrative usurpation of legislative prerogatives. We disagree.
Initially we note that, aside from the separation of powers and delegation arguments raised by petitioners, no one contends that the commission does not have a vital interest in regulating the outside investments of its employees (cf. Rapp v Carey 44 NY2d 157, 165; Evans v Carey, 40 NY2d 1008). The real problem in any of these situations is to strike the delicate balance between the interest of the employee in managing his or her investment portfolio or outside business activities and *30 the interest of the administrative body in promoting the efficiency of the services it must necessarily perform through human agencies. By statute (Executive Law, § 74, subd 2, par [c]), that determination is vested with the chairman, whose expertise in both the nature of duties of commission employees and the problems inherent in the functioning of the agency render him particularly well suited to accomplish this task. Although the commission is free to strike a different balance, if it so chooses, the approach that has been taken is sustainable.
It is fundamental that employees of any State agency must administer the law in accordance with the will of the Legislature, rather than in accordance with their own will or with an eye toward the viability of their investments. They are charged with the duty of administering the law without bias or favoritism and in complete disregard of their own personal interests. The major point of the rules now under attack is to eradicate this possibility by ensuring that such favoritism, however subtle or unconscious that partiality may be, is eliminated. Equally important, there is yet another consideration underlying the administrative judgment. It is not only essential that the commission and its employees in fact avoid basing their decisions on personal financial considerations, it is also critical that they appear to the public to be avoiding that evil. Connotations of favoritism, whether justified or not, inevitably arise where those who regulate have a direct or indirect interest in that which they regulate. Resort to any other path would effectively erode the public’s confidence in its agents.
Irrespective of the wisdom or advisability of the rules, it must be determined whether the chairman was delegated the power to promulgate them by the Legislature. For in the absence of such delegation, the administrative action would constitute an unauthorized exercise of legislative power in contravention of the separation of powers doctrine (Rapp v Carey, 44 NY2d 157, 162, supra; Matter of Broidrick v Lindsay, 39 NY2d 641, 646; People ex rel. Ingenito v Warden & Agent of Auburn Prison, 267 App Div 295, 299-300, affd 293 NY 803).
 It is elementary that ours is a system in which the governmental powers are distributed among three branches— the executive, legislative and judicial (NY Const, art III, § 1; art IV, § 1; art VI). It is equally obvious that one of these *31 branches may not arrogate unto itself the powers residing wholly in another branch (Youngstown Co. v Sawyer, 343 US 579). Although oftentimes combining legislative, executive and judicial functions, administrative agencies are but creatures of the Legislature and are possessed only of those powers expressly or impliedly delegated by that body (Finger Lakes Racing Assn. v New York State Racing & Wagering Bd., 45 NY2d 471, 480; Matter of City of Utica v Water Pollution Control Bd., 5 NY2d 164, 168-169).
That the Legislature cannot delegate its lawmaking power to an administrative agency is a principle firmly rooted in the system of government ordained by our Constitution. At the same time, however, there is a manifest distinction between the legislative power to be exercised only by that body and an ancillary power to implement the policies enacted into law (see, generally, Martin v State Liq. Auth., 43 Misc 2d 682, 686, affd 15 NY2d 707). The cornerstone of administrative law is derived from the principle that the Legislature may declare its will, and after fixing a primary standard, endow administrative agencies with the power to fill in the interstices in the legislative product by prescribing rules and regulations consistent with the enabling legislation (see, e.g., Matter of Bates v Toia, 45 NY2d 460, 464; Packer Coll. Inst. v University of State of N. Y., 298 NY 184, 189-190). Indeed, the difficulty and complexity of most of these policy determinations mandates that the legislative body be permitted to provide for the implementation of basic policy through the use of specialized agencies concentrating upon one particular problem at a time.
Thus, it is not necessary that the Legislature supply administrative officials with rigid formulas in fields where flexibility in the adaptation of the legislative policy to infinitely variable conditions constitute the very essence of the programs. Rather, the standards prescribed by the Legislature are to be read in light of the conditions in which they are to be applied (Matter of Broidrick v Lindsay, 39 NY2d 641, 646, supra; Matter of Sullivan County Harness Racing Assn. v Glasser, 30 NY2d 269, 276-277). Indeed, some areas are simply incapable of statutory completion. In the context of this case, it is obvious that even the most prescient of legislative bodies might exhaust its ingenuity in an attempt to proscribe all conflicts of interest only to find that in a particular case it has omitted an area in which the conflict between public obligations and private interests would be particularly egregious *32 (see Matter of Trustees of Vil. of Saratoga Springs v Saratoga Gas, Elec. Light & Power Co., 191 NY 123, 147; Fritz v Gorton, 83 Wn 2d 275, app dsmd 417 US 902).
It is necessary, therefore, to examine the purpose of the enabling legislation, its factual background and history to ascertain whether respondents have been delegated the power to promulgate these rules. In enacting the code of ethics (Public Officers Law, § 74), the Legislature recognized that, inasmuch as improper conflicts of interest "may arise in so many different forms and under such a variety of circumstances”, it was not only impractical but "unwise and unjust to proscribe them by statute with inflexible and penal sanctions” (L 1954, ch 696, § 1). Instead, it chose to couch the code of ethics in broad terms, prescribing the standards for officers and employees of all State agencies. In clear and unmistakable terms, the code declares the public policy of the State — to prevent even the appearance of the slightest taint of impropriety from infecting the decision-making process in our government. Particularly relevant to the rules promulgated by the chairman is subdivision 2 of section 74 which provides: "No officer or employee of a state agency * * * should have any interest, financial or otherwise, direct or indirect, or engage in any business or transaction or professional activity or incur any obligation of any nature, which is in substantial conflict with the proper discharge of his duties in the public interest” (see, also, Public Officers Law, § 74, subd 3, pars f-i; Public Service Law, § 9).
It is evident that in enacting this statutory scheme the Legislature recognized the varying duties and responsibilities of the multitude of State agencies would render it impractical to prescribe a rigid formula applicable to all. It is equally obvious that the statutes were not intended simply as a guide to the conscience of State employees. The provisions of the code of ethics are not merely innocuous platitudes or beneficient bromides relating to the standard of conduct that those charged with the public trust should follow. Were this the case, there would be no provision in the code empowering an agency to remove employees who violate their ethical duties (Public Officers Law, § 74, subd 4) nor any statute empowering an administrative agency to promulgate rules and regulations consistent with the legislative scheme (Executive Law, § 74, *33 subd 2, par [c]).[2] We conclude, therefore, that the Legislature has delegated to the chairman the authority to promulgate rules with respect to conflicts of interest and must decline petitioners’ invitation to prohibit administrative action in an area consistent with the accomplishment of the commission’s ultimate purpose.
Having concluded that the chairman had authority to promulgate the rules, it is necessary to address petitioners’ contention that the denials of their requests for an exemption from the operation of the rules were arbitrary and capricious. The commission quite properly recognized that comprehensive prophylactic rules, if rigidly enforced without any opportunity for relief in special circumstances, might result in serious injustice to an individual employee without any corresponding public benefit. Although not required to do so, the chairman adopted a policy which provides for individual exemption from the operation of the rules in areas consistent with the public interest. Having chosen to make this procedure available to commission employees, however, the chairman was bound to articulate objective standards against which an ultimate determination could be measured (Matter of Levine v Whalen, 39 NY2d 510, 518-519). Inasmuch as there were no standards of that character set forth to guide the chairman in deciding whether to grant an exemption, the denial of petitioners’ applications was arbitrary and capricious.
The safeguard against arbitrary administrative action lies in the promulgation of adequate standards in the exemption procedure itself to insure meaningful judicial review should an employee deem himself aggrieved upon the denial of an exemption. Protection of the individual employee against the exercise of arbitrary administrative power demands both procedural safeguards within the agency and outside checks upon the exercise of untrammeled administrative discretion (see CPLR 7803, subd 3). In reviewing applications for exemptions, the sole consideration contained in the rules is whether the holdings of a spouse or child are minimal enough to constitute *34 what the commissioner determines to be good cause. The flaw in this procedure lies in the fact that the rules do not provide any objective standards sufficient to invoke judicial review upon the denial of an exemption since there is no way of determining what guides were intended by the agency to govern its decision. While it is certainly not fatal that the decision is left to the discretion of the chairman, an administrative agency is forbidden from exercising its discretionary power without first detailing standards or guides to govern the exercise of that discretion (see Holmes v New York City-Housing Auth., 398 F2d 262; cf. Environmental Defense Fund v Ruckelshaus, 439 F2d 584, 598; Soglin v Kauffman, 418 F2d 163).
That is not to say, of course, that the chairman must lay down any hard and fast rules with respect to when any exemption would be available. Foisting such an obligation upon the agency would suffer the same infirmity as petitioners’ attempt to bind the chairman’s power to formulate rules in an area which the Legislature itself recognized as incapable of statutory completion. But where, as here, the rules delegate unfettered discretion to the chairman with inadequate safeguards against the exercise of arbitrary power or simple unfairness, a denial of a requested exemption is arbitrary and capricious as a matter of law.
 In sum, Rules 1 through 5 were promulgated pursuant to an express delegation of power by the Legislature and are valid. Inasmuch as the exemption procedure is fatally flawed as presently drafted, however, they may not be enforced against any employee who has heretofore sought to be exempted from their operation. These persons are released from the operation of the rules, however, only until such time as the chairman adopts an exemption provision which comports to the requirements stated herein or until it is determined that no exemption from the requirements of the rules are warranted in any case.
Accordingly, the orders of the Appellate Division should be modified, without costs, in accordance with this writing.
Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur with Chief Judge Cooke.
Orders modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.
*35 APPENDIX
Rules with respect to Personal Investments by Employees of the Department of Public Service and the Public Service Commission.
Rule 1. Utility companies subject to the jurisdiction of the Commission: Commissioners and all employees of the Department and the Commission are prohibited from holding any stocks or bonds or having any interest, direct or indirect, in companies subject to the jurisdiction of the Commission.[1]
Rule 2. Utility companies in other states, not subject to the jurisdiction of the Commission: Commissioners, the Chairman’s assistants, division and office heads and section chiefs, and all professional employees involved in the Regulation of Utilities program, are prohibited from holding stocks or bonds or any other interest, direct or indirect, in water, communications, electric or gas utilities in other states, except to the extent provided for in Rules 6 and 7.
Rule 3. Companies which manufacture and/or supply major electric utility equipment: Commissioners, members of the State Siting Board, the Chairman’s assistants, the Secretary, and the heads of and the professional employees in the Power Division, Office of Counsel, Office of Research, Office of Environmental Planning, Office of Accounting and Utility Finance, Office of Hearing Examiners and Office of Special Assistants are prohibited from holding stocks or bonds or any other interest, direct or indirect in companies included in Table I or which derive 25% of revenues from the manufacturing and/or supplying of (a) power plant generators; (b) power plant boilers; (c) power plant water cooling systems, coal desulfurization systems, and other major environmental control equipment for power plants, except to the extent provided for in Rules 6 and 7.
Rule 4. Companies which sell utility fuels (oil, natural gas, coal and uranium): Commissioners, members of the State Siting Board, the Chairman’s assistants, the Secretary, the heads of and professional employees in the Power and Gas Divisions, Office of Counsel, Office of Research, Office of Environmental Planning, Office of Accounting and Utility Finance, Office of Hearing Examiners and Office of Special Assistants are prohibited from holding stocks or bonds or any other interest, direct or indirect, in companies included in Table II or which derive 25% of revenues from the selling of oil, coal, natural gas or uranium to other companies, except to the extent provided for in Rules 6 and 7.
Rule 5. Companies which manufacture and/or supply telephone terminal equipment; specialized communications common carriers: Commissioners, the Chairman’s assistants, the Secretary and the heads of and professional employees in the Communications Division, Office of Counsel, Office of Research, Office of Accounting and Utility Finance, Office of Hearing Examiners and Office of Special Assistants are prohibited from holding stocks or bonds or any other interest, direct or indirect, in companies included in Table III or which derive 25% of revenues from: (a) manufactur *36 ing and/or supplying telephone terminal equipment, and/or (b) providing specialized communications common carrier services, except to the extent provided for in Rules 6 and 7.
Rule 6. Provision for exemptions: There shall be no opportunities for exemption from Rule 1, except to the extent noted in that rule and the footnote thereto with respect to an existing employee’s spouse or unemancipated children. Any person employed or entering the employ of the Department or the Commission may request an exemption from Rules 2, 3, 4 or 5, either for his own investments or those of his spouse or unemancipated children, by following the procedure described in Rule 7(b).
Rule 7. Enforcement:
(a) Every person who is in the employ of the Department or the Commission or entering their employ shall, within 20 days of the effective date of the rules or before commencement of their employment:
(1) Make such arrangements with his personal investments and those of his spouse and unemancipated minor children as may be necessary to comply with these rules, and sign a sworn certification that he is in compliance and will remain in compliance with these rules:
OR
(2) Seek an exemption or exemptions from the rules to the extent provided for in Rule 6, and in the manner set forth in subdivision (b) of this rule, which follows.
(b) Any person in or entering the employ of the Department or the Commission who wishes and is entitled to seek an exemption shall disclose the names of the companies in which he or his spouse or unemancipated children have an interest and the value of that interest, including the number of any shares of common equity that may be involved. This information, together with a brief statement of the employee’s reasons for wishing to retain the investment, shall be set forth in writing[2] and submitted to the Secretary to the Commission. The Secretary shall review the request, afford the employee applying for exemption an opportunity for an informal hearing, and write a decision on the request within 20 working days of its submission. A copy of the decision shall be furnished to the employee. If the decision is unsatisfactory to the employee, he shall be given seven working days to appeal to and/or seek to have an informal hearing before the Chairman or one of his assistants. The Chairman shall issue his decision within 20 working days of the date of appeal. That decision shall be final.
If the exemption is granted, the employee shall sign a statement certifying the extent to which he is in compliance with the rules and agreeing to refrain from any further investments prohibited by the rules.
If the exemption is denied, the employee shall be given a reasonable period of time, specified by the Chairman, to arrange for divestment of the prohibited interests or to take such other action as may be directed by the Chairman.
Rule 8. Violations: Any employee who knowingly and intentionally violates the provisions of these rules may be removed from employment in the manner provided by law.

. The full text of the rules are set forth in an appendix; the tables referred to therein have been omitted.

. Respondents’ reliance upon Rapp v Carey (44 NY2d 157, supra) is misplaced. The executive order declared unconstitutional in that case was found to have been promulgated without benefit of legislative delegation, either express or implied (id., p 160) and to have gone beyond the parameters of the code of ethics (id., pp 165-167). In contrast, the rules under attack here prohibit investment in companies whose performance is tied to the activities of the agency to whom the delegation was expressly committed (Executive Law, § 74, subd 2, par [c]).

. Any person who commenced employment with the Department before November 20, 1974 and whose spouse or minor children have such holdings must have or immediately obtain a ruling from the Secretary with respect to the propriety of such holdings.

. The form to be used is #P-8, a copy of which is attached.