FRED BOREALI et al., Respondents, v DAVID M. AXELROD, as Commissioner of the New York State Department of Health, et al., Appellants.

Third Department, July 23, 1987

---

### APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Peter H. Schiff, Nancy A. Spiegel* and *Denise A. Hartman* of counsel), for appellants.

*Hinman, Straub, Pigors & Manning, P. C. (Bartley J. Costello, III, Paul M. Collins* and *Eileen M. Kelley* of counsel), for respondents.

*John F. Banzhaf, III,* for Action on Smoking and Health (ASH), *amicus curiae.*

*Peter L. Zimroth, Corporation Counsel (Leonard Koerner* and *Francis F. Caputo* of counsel), for City of New York, *amicus curiae.*

*Robert M. Kaufman (Beatrice S. Frank, Robert Eisenstadt, Barry Ensminger, Glenn E. Jenkins* and *Ellen B. Simon* of counsel), for Association of the Bar of the City of New York and others, *amici curiae.*

*Daniel S. Ross* for American Lung Association of New York State, Inc., and others, *amici curiae.*

*John J. Cavanaugh, Jr.,* on behalf of himself and others, *amici curiae.*

*Daniel L. Feldman, amicus curiae.*

*Finley, Kumble, Wagner, Heine, Underberg, Manley Myerson & Casey (William L. Kandel* and *Charles H. Kaplan* of counsel), for New York Chamber of Commerce and Industry, Inc., *amicus curiae.*

*Charles J. Engel, Jr.,* for the Pyramid Companies, *amicus curiae.*

### OPINION OF THE COURT

WEISS, J.

It is more simple to state what this case is not about. It is

not about the harmful effects of tobacco smoke upon the members of society who are nonsmokers. Rather, the issue is whether a subsidiary agency, in this case an advisory council to defendant Commissioner of Health, has the power to enact a regulation having the force of law which sets forth the policy of the State on the highly controversial subject of smoking. Today, we are called upon to determine whether defendant Public Health Council (PHC) can promulgate regulations, under the broad mantle of dealing with "any matters affecting the security of life or health or the preservation and improvement of public health in the state of New York" (Public Health Law § 225 [5] [a]), which have dramatic and far-reaching effects upon social policy and the business environment of this State.

On February 6, 1987, the PHC, with the approval of the Commissioner, promulgated 10 NYCRR part 25 which, with limited exceptions, prohibits the smoking or carrying of lighted cigarettes, cigars, pipes or other smoking devices in indoor areas open to the public. The purport of the regulations is to limit the public's exposure to environmental tobacco smoke,[1] which recent medical evidence, particularly the report of the United States Surgeon General published in December 1986, identifies as a serious health hazard to otherwise healthy nonsmokers. The indoor areas include, but are not limited to, taxicabs, schools, hospitals, shopping malls, hotel lobbies, auditoriums, courthouses, food markets, stores, banks and other commercial service establishments (10 NYCRR 25.2 [2]-[5]). Employers are required to provide smoke-free work areas for nonsmoking employees, but may set aside areas for smoking provided contiguous nonsmoking areas exist sufficient to meet employee demand. The regulations exempt private homes, residences, automobiles, food service establishments seating fewer than 50 people, conventions and trade shows by private groups, bars, hotel and motel rooms rented to guests, and retail tobacco stores (see, 10 NYCRR 25.2, 25.4). The regulations were to take effect May 7, 1987.

---

1. Environmental tobacco smoke results from the combination of sidestream smoke, which is unfiltered smoke released into the air from the burning end of a cigarette when the smoker is not inhaling, and the fraction of mainstream smoke (that inhaled through the cigarette and filter) not retained by the smoker.

In March 1987, plaintiffs[2] commenced a CPLR article 78 proceeding, since converted to a declaratory judgment action, seeking to annul 10 NYCRR part 25 in its entirety on the grounds that (1) the enactment was in excess of constitutional, statutory and administrative authority, (2) the Legislature has preempted the area of public smoking by enacting Public Health Law article 13-E, and (3) the classifications and exemptions contained in the regulations are arbitrary. The complaint was deemed a motion for summary judgment and, in their answer and affidavit in opposition, defendants asserted that the regulations were promulgated pursuant to the authority conferred on the PHC by Public Health Law § 225 (4) and (5) (a). Supreme Court granted plaintiffs' motion, finding that 10 NYCRR part 25 controverted existing State policy as set forth in Public Health Law article 13-E and that the PHC had exceeded its authority in adopting the challenged regulations. This appeal ensued.

■ Initially, we reiterate Supreme Court's observation that the deleterious effects of public tobacco use are not at issue in this proceeding. This record provides ample scientific support for the conclusion that environmental tobacco smoke is harmful to nonsmokers. Nor does this case involve the right of the Legislature to promulgate restrictions on the public use of tobacco. Public Health Law article 13-E, entitled "Regulation of Smoking Tobacco in Certain Public Areas", exemplifies this authority and effectively precludes the smoking of tobacco in any public library, museum or theatre, except in designated smoking areas (Public Health Law §§ 1399-o, 1399-q). This action by the Legislature to restrict the public use of tobacco in limited areas does not, however, substantiate plaintiffs' assertion that the Legislature has preempted the field of tobacco use *(see, Monroe-Livingston Sanitary Landfill v Town of Caledonia, 51 NY2d 679, 683).* Preemption need not be express, but may be inferred from "a declaration of State policy by the Legislature or from the legislative enactment of a comprehensive and detailed regulatory scheme in a particular area" *(New York State Club Assn. v City of New York, 69 NY2d 211, 217; see, Consolidated Edison Co. v Town of Red Hook, 60 NY2d 99, 105).* There is no express preemption language in Public Health Law article 13-E, nor is any implied intent evident in the legislative history, which indicates

---

2. Plaintiffs are comprised of a restaurant owner, trade and business associations, a State Senator and an Assemblyman.

that the enactment was principally designed to alleviate the physical discomfort and annoyance suffered by nonsmokers at certain activities *(see,* sponsor's mem, 1975 NY Legis Ann, at 257). In effect, Public Health Law article 13-E is of limited scope and purpose, and certainly not a comprehensive scheme to regulate public smoking. Moreover, the Legislature's rejection of numerous attempts to expand this legislation since its enactment in 1975 is inherently dubious and does not warrant the inference that Public Health Law article 13-E represents a definitive State policy on the regulation of public smoking *(see, Clark v Cuomo,* 66 NY2d 185, 190-191).[3] We further note that the statute and regulations are compatible, for where the regulations apply to areas covered by the statute "the provisions of article 13-E shall supersede the provisions of this Part if inconsistent therewith" (10 NYCRR 25.2 [a] [1]). In short, the Legislature has not preempted the field of public tobacco use.

What is at issue on this appeal is the authority of the PHC to implement regulations comprehensively restricting the use of tobacco in indoor areas used by the public. The PHC is a component of the Department of Health and consists of the Commissioner and 14 members appointed by the Governor (Public Health Law § 220). The PHC is statutorily authorized, at the Commissioner's request, to "consider *any matter* relating to the preservation and improvement of public health" (Public Health Law § 225 [1]; emphasis supplied). Subject to the Commissioner's approval, the PHC is authorized to establish sanitary regulations to be known as the State Sanitary Code (Public Health Law § 225 [4]) pertaining to *"any matters* affecting the security of life or health or the preservation and improvement of public health * * * and with any matters as to which jurisdiction is conferred upon the public health council" (Public Health Law § 225 [5] [a]; emphasis supplied). Defendants principally rely on Public Health Law § 225 (4) and (5) (a) for the PHC's authority to enact the challenged regulations *(see,* 10 NYCRR 25.1 [a], [b]). Pursuant

---

**3.** Perhaps the best confirmation of the ambiguity of such legislative history is provided in the divergent conclusions reached by the members of the Administrative Regulations Review Commission. In February 1987, four members of the Commission signed a resolution condemning the PHC for adopting the regulations in question. In contrast, defendants submitted an affidavit and report by Assemblyman Gary Proud, cochairman of the Commission, condemning the aforementioned resolution as invalid, and opining that the PHC was authorized to enact 10 NYCRR part 25.

to those provisions, defendants maintain that the Legislature delegated to the PHC broad interstitial authority to regulate matters affecting the public health, including smoking. In response, plaintiffs contend that the PHC acted in excess of its statutory authority and, in so doing, usurped the lawmaking power entrusted to the Legislature in violation of the separation of powers doctrine. We agree with the latter position.

Fundamental to our system of government is the distribution of powers among the three coordinate branches—the executive, legislative and judicial branches (NY Const, art III, § 1; art IV, § 1; art VI). This tripartite system is designed to achieve a delicate balance preventing the excessive concentration of power in any one particular branch or person and to insure a representative form of government *(Rapp v Carey,* 44 NY2d 157, 162; *see, People v Parker,* 41 NY2d 21, 28). Pursuant to NY Constitution, article III, § 1, the legislative power of the State is vested in the Senate and Assembly. By virtue of this constitutional mandate, the Legislature may not delegate its lawmaking function to an administrative agency *(see, Matter of Nicholas v Kahn,* 47 NY2d 24, 31; *Matter of Levine v Whalen,* 39 NY2d 510, 515; McKinney's Cons Laws of NY, Book 1, Statutes § 3 [b]). The Legislature may empower an administrative agency to administer the law as enacted by the Legislature *(Matter of Nicholas v Kahn, supra,* at 31; *Matter of Levine v Whalen, supra,* at 515). The Legislature may confer such discretionary authority "only if it *limits the field* in which that discretion is to operate and provides *standards* to govern its exercise" *(Matter of Levine v Whalen, supra,* at 515; emphasis supplied; *accord, Matter of City of Utica v Water Pollution Control Bd.,* 5 NY2d 164, 168-169). This qualification, however, does not mean that a precise, specific standard must be provided, particularly where the complexity of the regulated area demands a substantial degree of flexibility *(supra).* In effect, the "standards prescribed by the Legislature are to be read in light of the conditions in which they are to be applied" *(Matter of Nicholas v Kahn, supra,* at 31).

These principles in mind, a reading of Public Health Law § 225 (4) and (5) (a) confirms that the Legislature has conferred broad authority on the PHC. By its express terms, Public Health Law § 225 (5) (a) authorizes the PHC to "deal with *any matters* affecting the * * * public health" (emphasis supplied). Contrary to plaintiffs' argument, the fact that the Legislature has delineated the subject matter of certain regulated areas in Public Health Law § 225 (5) (b)-(t) does not

diminish the broad grant of authority set forth in Public Health Law § 225 (5) (a). In *Chiropractic Assn. v Hilleboe* (12 NY2d 109), the Court of Appeals upheld a provision of the Sanitary Code regulating the use of X rays and a corresponding restriction was not specifically set forth in the statute.[4] The court determined that the PHC's authority to enact the regulation derived from the language set forth in Public Health Law § 225 (4) (a), now § 225 (5) (a) *(supra,* at 119-120).

Plaintiffs further assert that Public Health Law § 225 (5) (a) lacks a constitutionally permissible standard. Again, the *Hilleboe* decision is on point. Recognizing that the PHC must be accorded considerable flexibility to confront and regulate emerging public health matters, and given the specific context of reducing the harmful effects of ionizing radiation, the Court of Appeals approved the standard set forth in Public Health Law § 225 (4) (a), now § 225 (5) (a), to "deal with any matters affecting the security of life or health or the preservation and improvement of public health". A similar standard was approved in *Matter of Levine v Whalen* (39 NY2d 510, *supra),* a case addressing the impact of Public Health Law § 2800, conferring authority upon the Department of Health to develop and administer the State's policy on hospital and related services. This delegation of authority was accompanied by a standard " 'to provide for the protection and promotion of the health of the inhabitants of the state' " *(supra,* at 516, quoting Public Health Law § 2800). The Court of Appeals approved this standard giving due regard to the express State policy that " '[h]ospital and related services * * * [be] of the highest quality, efficiently provided and properly utilized at a reasonable cost' " and the specific context in which the delegation of authority was being considered *(supra,* at 516).

The difficulty with the instant case is that the language of Public Health Law § 225 (5) (a), literally construed, confers virtually unfettered discretion upon the PHC to regulate public health matters and this authority is being exercised in the expansive context of public tobacco use. Even defendants concede that this grant of authority is not limitless, for to hold otherwise would work a complete abdication of legislative responsibility in the area of public health. We recognize that

---

4. Subsequent to the promulgation of the regulation pertaining to ionizing radiation, and while *Hilleboe* was pending, the Legislature enacted Public Health Law § 225 (4) (p), now § 225 (5) (p), which expressly identified ionizing radiation as an area for regulation under the Sanitary Code. The Court of Appeals, however, made no reference to this amendment.

in view of the breadth of authority conferred, a precise line of demarcation between what the PHC can and cannot do is not easily delineated. Nonetheless, a realistic appraisal of the PHC's powers must be made in order to constitutionally "limit the field" of authority delegated (see, *Matter of Consolidated Edison Co. v Public Serv. Commn.*, 47 NY2d 94, 102, *revd on other grounds* 447 US 530, *revd sub nom. Central Hudson Gas & Elec. v Public Serv. Commn.*, 447 US 557; *Matter of Levine v Whalen, supra*, at 515). In effect, 10 NYCRR part 25 serves to eliminate the smoking of tobacco in public indoor areas, with only limited exceptions. A realistic assessment of 10 NYCRR part 25 compels us to conclude that it is more than just a public health measure, for it effectuates a profound change in social and economic policy, that, as Supreme Court aptly observed, "will affect how millions of New Yorkers live their lives". Such dramatic changes in public policy, however meritorious in terms of the public health, are the function of the Legislature, not an administrative agency (see, McKinney's Cons Laws of NY, Book 1, Statutes § 2, at 13; 2 NY Jur 2d, Administrative Law, § 36, at 56). In our view, the PHC has not merely implemented the legislative directive set forth in Public Health Law § 225 (5) (a), but has effectively usurped the prerogative of the Legislature to establish State policy in direct contravention of the separation of powers doctrine (see, *Rapp v Carey*, 44 NY2d 157, *supra; cf., Clark v Cuomo*, 66 NY2d 185, *supra*). The PHC, solely responsible to the Commissioner and not the electorate, does not have the authority to unilaterally assume the lawmaking function of the Legislature, nor may the Legislature confer such authority upon the PHC.

This conclusion becomes particularly persuasive when consideration is given to the regulatory exemptions adopted (see, 10 NYCRR 25.2, 25.4). By statute, the provisions of the Sanitary Code are accorded the force and effect of law (Public Health Law § 229). Unless the regulations are so lacking in reason as to be essentially arbitrary, the courts will not interfere (*Molina v Games Mgt. Servs.*, 58 NY2d 523, 529; *Aerated Prods. Co. v Godfrey*, 290 NY 92, 99). In our examination of the specific areas of exemption, we first observe that it is highly doubtful that the PHC could have prohibited the use of tobacco in private homes even had it elected to do so. The remaining exemptions relate to certain commercial areas where the PHC has deemed it necessary to avoid any undue economic impact. For example, defendants exempted trade

shows and conventions in recognition of the interstate competition in this area (see, 10 NYCRR 25.2 [a] [5] [i], [ii]). Significantly, the Attorney-General has conceded in his reply brief that the limited exemptions provided are "unrelated to the public health concerns animating the regulations". Given the public health motivation underlying the regulations in question, it is difficult to perceive any rational basis for the exemptions provided. Tobacco smoke has to be as dangerous, even lethal, in a restaurant seating less than 50 persons, or in a bar, as it is in a school, hospital or courthouse. Similarly, being subjected to smoke in a convention or trade show cannot be less harmful than exposure to the same kind of smoke in a shopping mall or supermarket. In our view, the exemptions were promulgated on an arbitrary basis, notwithstanding defendants' attempt to provide an economic justification. Since the PHC has specifically provided for the severability of any part of 10 NYCRR part 25 found to be invalid (10 NYCRR 25.7), the effect of striking the exemptions is to create an outright ban on smoking in indoor areas open to the public. This actual result exemplifies the fact that the PHC has acted in excess of its delegated authority.

Accordingly, we conclude that Supreme Court properly granted plaintiffs' motion for summary judgment declaring 10 NYCRR part 25 null and void. In so deciding, we in no way minimize the health hazard posed by environmental tobacco smoke. Efforts to regulate the public use of tobacco are better addressed to the Legislature.

LEVINE, J. (dissenting). The statutory delegation of rule-making authority to defendant Public Health Council (PHC) is made in the broadest terms, "to establish, and from time to time, amend * * * sanitary regulations, to be known as the sanitary code of the state of New York", which may "deal with any matters affecting the security of life or health or the preservation and improvement of public health in the state of New York" (Public Health Law § 225 [4], [5] [a]). Neither plaintiffs nor the amici who have filed briefs in support of affirmance have challenged the validity of the procedures through which the smoking regulations were adopted or the factual support for the PHC's finding that exposure to environmental tobacco smoke constitutes a serious health hazard to large segments of the nonsmoking general public. Literally, then, the smoking regulations appear to fall well within the rule-making responsibilities regarding the prevention of dis-

ease and preservation of public health which the Legislature assigned to the PHC almost 75 years ago (see, L 1913, ch 559, § 2). They should, therefore, be enforceable unless they violate some constitutional, statutory or general administrative law principle.

The majority correctly, in our view, rejects plaintiffs' challenges to the validity of the regulations based upon preemption and lack of standards grounds. Clearly, the limited statutory enactment of a ban on smoking in public libraries, museums and theatres (Public Health Law art 13-E) and legislative rejection of various proposals to extend that prohibition in other public places are insufficient to show a legislative intent to preempt or to establish the existence of a State policy restrictive of the PHC's right to regulate smoking in public places (see, Clark v Cuomo, 66 NY2d 185, 190-191; Monroe-Livingston Sanitary Landfill v Town of Caledonia, 51 NY2d 679, 683). Likewise, the majority effectively disposes of plaintiffs' contention that the regulations are invalid because of the absence of standards for the PHC's rule-making powers under Public Health Law § 225 (4) and (5) (a). This conclusion is dictated by the Court of Appeals upholding of a strikingly similar delegation of authority to the Department of Health in Matter of Levine v Whalen (39 NY2d 510, 517), and the numerous instances, cited therein, where equally broad charges to State and Federal administrative agencies have been upheld over lack of standards objections (see also, Sunshine Anthracite Coal Co. v Adkins, 310 US 381, 398).

Despite the legal adequacy of the standard defining the subject area of the PHC's rule-making authority as to "any matters affecting the security of life or health or the preservation and improvement of public health" (Public Health Law § 225 [5] [a]), the majority holds that the smoking regulations violate the constitutional doctrine of separation of powers and are arbitrary and capricious. We are unable to agree with either conclusion. Regarding the separation of powers issue, the majority concurred in Supreme Court's characterization of the regulation as significantly impacting upon the life-styles of " 'millions of New Yorkers' ". Such a "profound change in social and economic policy", the majority reasons, is exclusively within the province of the Legislature to effect. The regulations are, therefore, held to constitute a usurpation of legislative power in excess of what was, or could constitutionally be, delegated.

In considering first whether the separation of powers doc-

trine *prevented* the Legislature from delegating to the PHC the power to promulgate smoking regulations having the impact ascribed to them, we must assume for the moment that adoption of the regulations indeed fell within the statutory delegation of Public Health Law § 225. As already discussed, this assumption is not unreasonable on a literal reading of the statute and the undisputed fact that environmental tobacco smoke is a public health hazard. This effectively distinguishes the instant case from *Rapp v Carey* (44 NY2d 157) and *Matter of Broidrick v Lindsay* (39 NY2d 641), where the claimed authority of the chief executive to adopt rules was not expressly conferred by statute, as is the case here, but implied from the general executive prerogative to implement and enforce the laws. The distinction made here was noted in *Matter of Nicholas v Kahn* (47 NY2d 24, 30): "Irrespective of the wisdom or advisability of the rules, it must be determined whether the chairman was delegated the power to promulgate them by the Legislature. For *in the absence of such delegation,* the administrative action would constitute an unauthorized exercise of legislative power in contravention of the separation of powers doctrine" (citing, *inter alia, Rapp v Carey [supra]; Matter of Broidrick v Lindsay [supra]* [emphasis supplied]). When either there is no direct statutory source of rule-making authority, or the governing statute cannot fairly be interpreted to extend authority as to the particular regulation adopted, the separation of powers doctrine indeed has vitality in preventing infringement upon legislative policy-making prerogatives *(see, Under 21 v City of New York,* 65 NY2d 344, 356; *see also, American Ship Bldg. v Labor Bd.,* 380 US 300, 317-318).

Under modern administrative law principles, however, the separation of powers doctrine does not prevent a Legislature from adopting a broad, flexible policy approach, setting forth an over-all objective in the statute (here, the promulgation of a State-wide health code) and delegating authority to a knowledgeable administrative agency it has created to, in effect, *legislate* the details necessary to implement the comprehensive statutory purpose, even when such rule-making necessarily entails *policy* decisions *(see,* 1 Davis, Administrative Law Treatise §§ 3:2, 3:3, at 150-157 [2d ed]). Thus, the United States Supreme Court has ruled that "[i]t is no objection that the determination of facts and the inferences to be drawn from them in the light of the statutory standards and declaration of policy call for the exercise of judgment, and for the

*formulation of subsidiary administrative policy within the prescribed statutory framework" (Yakus v United States,* 321 US 414, 425 [emphasis supplied]; *see, Chevron U. S. A. v Natural Resources Defense Council,* 467 US 837, 843).

When the subject of the legislation is complex and far-reaching (such as regulation of the myriad forms of public health hazards) and the statutory standard for administrative action is, of necessity, loosely drawn, the agency will be required to make major policy decisions which may have significant social and economic effects (1 Davis, Administrative Law Treatise § 3:3, at 155-156 [2d ed]). Accordingly, the United States Supreme Court has upheld delegation of nationwide fixing of maximum commodity prices and rents by administrative regulation, which, in the " 'judgment' " of the administrator, are " 'fair and equitable' ", when prices " 'have risen or threaten to rise to an extent or in a manner inconsistent with the purposes of [the wartime Emergency Price Control Act]' " *(Yakus v United States, supra,* at 420, quoting Emergency Price Control Act of 1942 § 2 [a]). Assertion of administrative rule-making power over the entire national cable television industry was held valid by virtue of the general statutory authority to regulate " 'all interstate * * * communication by wire or radio' " under the Federal Communications Act of 1934, even though television was then in its infancy and cable television was unheard of *(United States v Southwestern Cable Co.,* 392 US 157, 172, quoting 47 USC § 152 [a]).

Insofar as New York authority on administrative policy-making is concerned, it is significant that Public Health Law § 2800, quoted in full in *Matter of Levine v Whalen* (39 NY2d 510, *supra)* to show the adequacy of the legislative standard for administrative regulation of hospitals, provided that " 'the department of health shall have the central, comprehensive responsibility for the *development and administration of the state's policy with respect to hospital and related services' "* *(supra,* at 516, quoting Public Health Law § 2800; emphasis supplied). The point of the matter is that in a modern complex industrial society such as ours, the Legislature not only has the prerogative to set social and economic policy, it must and does also have the prerogative to define an over-all statutory purpose in general terms and delegate policy-making to an administrative agency by legislative rule-making within the statutory parameters. Short of the creation of something like a roving commission having untrammeled authority to adopt

any and all rules for the general welfare, such delegation does not violate the separation of powers doctrine.

It follows from the foregoing that the smoking regulations may not be invalidated under the separation of powers doctrine merely because they entail important social and economic policy choices having a widespread impact on the State's inhabitants. Therefore, the issue here distills to whether the regulations are invalid under general administrative law standards. "An administrative regulation, *legislative in character,* will be upheld as valid if it has a rational basis, that is, if it is not unreasonable, arbitrary or capricious" *(Matter of Levine v Whalen, supra,* at 518; emphasis supplied). It must be determined whether the regulation "reasonably promotes or transgresses the pronounced legislative judgment" *(Matter of Consolidated Edison Co. v Public Serv. Commn.,* 47 NY2d 94, 102, *revd on other grounds* 447 US 530). Put in other, similar ways, the remaining question is whether the regulations are " 'reasonably related to the purposes of the enabling legislation' " *(Mourning v Family Publ. Serv.,* 411 US 356, 369, quoting *Thorpe v Housing Auth.,* 393 US 268, 280-281), or whether they are in harmony with the language, policy, remedial structure and legislative history of the governing statute *(see, United States v Riverside Bayview Homes,* 474 US 121, 137-139; *Interstate Commerce Commn. v American Trucking Assns.,* 467 US 354, 363; *United States v Vogel Fertilizer Co.,* 455 US 16, 25).

The regulations under review qualify under all of the foregoing criteria. As already discussed, the regulations are consistent with a literal reading of the enabling law, a conclusion foreshadowed by the holding in *Chiropractic Assn. v Hilleboe* (12 NY2d 109). The history of the legislative creation of the PHC also confirms that an expansive, flexible grant of authority to promulgate provisions of a sanitary code to meet existing or future public health needs or dangers was intended, and not restricted to the statutory powers of the Commissioner of Health or the Department of Health, nor limited to the specific grants of authority as to statutorily identified matters to be addressed in the Sanitary Code, as plaintiffs here contend. The original legislation (Public Health Law former § 2-b, as added by L 1913, ch 559, § 2) contains the identical general grant of PHC rule-making power with respect to the Sanitary Code now set forth in Public Health Law § 225 (4) and (5) (a). Significantly, under the original legislation, neither the Commissioner nor the Department was given

rule-making authority. The Commissioner's powers were generally supervisory of local health authorities, appointive, investigative, enforcemental and advisory *(see,* L 1913, ch 559, §§ 5-8). Obviously, the intent was that the PHC's role in promulgating a State Sanitary Code was to be broader than any express or implied rule-making power of the Department or the Commissioner. Likewise, it is significant that the 1913 law only identified two specific areas to be addressed in the Code, i.e., regulation of the practice of midwifery and the promotion of health in Indian reservations *(see,* Public Health Law former § 2-b, as added by L 1913, ch 559, § 2). Therefore, it is unreasonable to assume, as plaintiffs argue here, that the PHC's authority was to be restricted to adopting rules related or closely akin to the specific statutory delegations now contained in Public Health Law § 225 (5) (b)-(t); (6) and (7). The United States Supreme Court, in *United States v Southwestern Cable Co.* (392 US 157, 172, *supra),* rejected a similar argument as follows: "Nothing in the language of [47 USC] § 152 (a), in the surrounding language, or in the [Communications] Act's history or purposes limits the Commission's authority to those activities and forms of communication that are specifically described by the Act's other provisions".

The smoking regulations promulgated by the PHC are rational and reasonably related to the legislative purpose of providing for a comprehensive code to deal with matters of genuine concern for the preservation of public health. There is no dispute that environmental tobacco smoke is a serious public health hazard. The appropriateness of dealing with the health hazard of other forms of environmental *smoke* through an administrative sanitary code was recognized as early as 1913 *(see, People v New York Edison Co.,* 159 App Div 786; *see also, People v Tatje,* 203 Misc 949). Although no one can gainsay the majority's conclusion that the regulations will have a significant social and economic impact, we read them as representing a balanced attempt to protect nonsmokers from *involuntary* exposure to environmental tobacco smoke, while giving due regard to the habits and desires of smokers and to the economic burdens of compliance placed upon employers and operators of establishments covered by the prohibition. Thus, while the regulations contain a general ban on smoking in public places, employers and operators of facilities are permitted to provide segregated smoking areas (10 NYCRR 25.2 [a] [unnumbered last para]; [b] [6]). The regulations also provide for the waiver of its restrictions upon a

showing of "undue financial hardship or that other factors exist which would render strict compliance unreasonable" (10 NYCRR 25.6 [a]). One would be hard put to devise a fairer, more limited approach than that taken by the PHC, without compromising the legitimate goal of providing comprehensive protection of the lives and health of the nonsmoking public. The exemption of bars, small restaurants, conventions and trade shows is easily explained as a reflection of the PHC's recognition that, as to certain commercial establishments, segregation is unfeasible, a total ban would be unduly burdensome and the places omitted from the ban are readily avoidable, without significant privation, by nonsmokers. While perhaps others might have drawn the lines as to exempted facilities differently than did the PHC, it can hardly be said that the distinctions contained in the smoking regulations are totally irrational.

In short, we find that the smoking regulations are reasonably related to the statutory purpose, within the rule-making authority validly delegated to the PHC, and are not arbitrary and capricious. The concern of the majority, regarding the impact of the regulations and the possibility of administrative abuse under broad statutory standards such as presented here, is understandable. However, there are adequate means for the courts to check administrative excesses without distorting the separation of powers doctrine. As previously discussed, an administrative regulation may fall outside the parameters of the enabling legislation, based upon a fair reading of its statutory language, purpose, legislative history and basic structure. For example, the PHC could not adopt health-related rules fundamentally outside the scope, concept and function of a sanitary code. Nor could it enter health-affecting areas where the Legislature has itself engaged in comprehensive statutory codification or assigned responsibility to other agencies. Administrative agencies are required to justify the *factual* as well as the statutory basis for the adoption of regulations *(see, Bowen v American Hosp. Assn.,* 476 US 610, —, 106 S Ct 2101, 2113). Legislative delegation may be construed narrowly when, pursuant to that delegation, administrative action threatens to impinge on constitutional rights *(see, Kent v Dulles,* 357 US 116, 129). Administrative regulation may be invalidated for the same reason *(see, e.g., Matter of Consolidated Edison Co. v Public Serv. Commn.,* 447 US 530, *revg* 47 NY2d 94, *supra).* Since no violation of either these or any other principles limiting administrative excesses has been

demonstrated here, we would reverse and uphold the regulations.

YESAWICH, JR., and HARVEY, JJ., concur with WEISS, J.; MAHONEY, P. J., and LEVINE, J., dissent and vote to reverse in an opinion by LEVINE, J.

Order and judgment affirmed, without costs.