# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision
before publication in the New York Reports.

No. 5
In the Matter of Wenceslao
Juarez, et al.,
     Respondents,
   v.
New York State Office of Victim
Services, et al.,
     Appellants.

Owen Demuth, for appellants.
George F. Carpinello, for respondents.

STEIN, J:

Regulations of the Office of Victim Services (OVS), as amended in January 2016,
limit attorneys' fee awards for crime victim claimants to the costs incurred on applications
for administrative reconsideration or appeal and on judicial review (9 NYCRR §§ 525.3,
525.9). The question presented on this appeal is whether these regulations conflict with
the authorizing statute, Executive Law article 22, or are otherwise irrational. We hold that
the regulations are fully consistent with the governing statutory language and purpose,
within OVS's authority, and rational.

- 1 -

I.

Executive Law article 22 effectuates "the legislature's intent that aid, care and support be provided by the state, as a matter of grace, for . . . victims of crime" and their dependents (Executive Law § 620). OVS administers the provisions of article 22 and is authorized to "hear and determine all claims for awards filed with the office . . . and to reinvestigate or reopen cases as necessary" (*id.* § 623 [5]). The parties agree that the statute empowers OVS to reimburse victims for "out-of-pocket loss," which is defined as "unreimbursed and unreimbursable expenses or indebtedness *reasonably* incurred for medical care or other services necessary as a result of the injury upon which such claim is based" and "shall also include . . . the cost of *reasonable* attorneys' fees for representation before the office and/or before the [A]ppellate [D]ivision upon judicial review not to exceed [$1,000]" (*id.* § 626 [1] [emphasis added]). OVS is required to "adopt, promulgate, amend and rescind suitable rules and regulations to carry out the provisions and purposes of" the statute, "including . . . rules for the approval of attorneys' fees for representation before the office and/or before the appellate division upon judicial review . . . , and rules for the authorization of qualified persons to assist claimants in the preparation of claims for presentation to the office" (*id.* § 623 [3]).

As relevant here, OVS regulations formerly provided that claimants had a "right to be represented . . . at all stages of a claim" (9 NYCRR former § 525.9 [a]) and, "[w]henever an award [was] made to a claimant who [was] represented by an attorney, [OVS was required to] approve a reasonable fee commensurate with the services rendered, up to $1,000," unless the request for attorneys' fees was premised on a claim "submitted without

legal or factual basis" (9 NYCRR former § 525.9 [c]). OVS acknowledges that this meant that attorneys' fees, if reasonable, were available at all stages of a claim. However, effective January 13, 2016, OVS amended 9 NYCRR § 525.9 to provide that "[a]ny claimant . . . may choose to be represented before [OVS], at any stages of a claim, by an attorney-at-law . . . and/or before the Appellate Division upon judicial review of the office's final determination," but "only those fees incurred by a claimant during: (1) the administrative review for reconsideration of such decision . . . ; and/or (2) the judicial review of the final decision of [OVS] . . . may be considered for reimbursement" (9 NYCRR § 525.9 [a]). The new regulations expressly define "[r]easonable attorney's fees for representation before the office and/or before the appellate division upon judicial review" to mean only reasonable fees incurred during the explicitly enumerated stages of the claim process (9 NYCRR § 525.3 [h]). The amendments did not alter the preexisting regulation setting forth "factors to be considered in determining the reasonableness of a fee," which include "the time and labor required [of the attorney], the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly," and "whether any part of the cost of the legal service provided to the claimant has been paid or is payable by a third party" (9 NYCRR § 525.9 [d] [1], [6]).

OVS issued a regulatory impact statement indicating that the "purpose of th[e] rule change [wa]s to limit attorneys' fees pursuant to article 22 of the Executive Law." OVS stated that the amendments were "designed to conform the regulations to the enacting statute," explaining that the prior regulations permitted claimants to recover attorneys' fees that "far exceed[ed]" the "*reasonable* expenses" specified under Executive Law § 626 (1).

OVS indicates that Victim Assistance Programs (VAPs) are federally funded with a state match, and it emphasized in its regulatory impact statement that it "fund[ed] 228 [VAPs] across New York State, distributing in excess of $35 million to these programs to assist and advocate on behalf of victims and claimants." The required services provided by the VAPs include, among other things, "assist[ing] victims and/or claimants in completing and submitting OVS applications and assist[ing] claimants through the claim process." OVS determined that the legislature did not intend that attorneys' fees incurred in relation to assistance within the scope of services provided by VAPs would be considered reasonable under the statute.

The individual petitioners herein are crime victims who were represented by petitioner Gordon, Jackson & Simon in their applications for awards from OVS. As relevant here, petitioners Michelle Soriano and Daniel Velez filed their applications in 2016, after the effective date of OVS's amended regulations; Soriano was awarded $125 and Velez was awarded $365. Soriano also filed a separate emergency application for moving expenses, which included 23 supporting attachments. That application was granted and Soriano was awarded approximately $1,400 in moving and storage expenses. However, OVS denied the requests of both Soriano and Velez for attorneys' fees, and for reconsideration of those requests, on the ground that the fees sought did not relate to assistance obtained in connection with administrative or judicial review. Soriano and Velez did not make separate applications for attorneys' fees in applying for reconsideration.

Thereafter, petitioners commenced this combined CPLR article 78 proceeding and declaratory judgment action in December 2016, arguing in pertinent part that the amended regulations and the denials of Soriano's and Velez's attorneys' fee requests were arbitrary and capricious. In that regard, petitioners asserted that the 2016 amendments were contrary to the plain language of the Executive Law and the legislature's intent that attorneys' fees be awarded "for representation before the office," without restriction.

Supreme Court, as relevant here, granted OVS's subsequent motion for summary judgment and declared that the amendments "constitute an appropriate and lawful exercise of OVS's authority under [a]rticle 22 of the Executive Law to adopt rules governing the approval of reasonable attorneys' fees for representation before [OVS]." The court held that OVS's statutory authority to adopt regulations "governing the approval of attorneys' fees for representation before the agency, together with the agency's duty to award only reasonable reimbursement to crime victims, provide a sufficient statutory predicate for excluding attorneys' fees incurred in the preparation and submission of claims as . . . 'not reasonable expenses.'" Finally, Supreme Court concluded that neither the amended regulations, themselves, nor their application to Soriano's and Velez's fee requests, resulting in the denial thereof, were arbitrary and capricious.

Upon petitioners' appeal, the Appellate Division modified and, in relevant part, annulled the amendments to 9 NYCRR 525.9 (169 AD3d 52 [3d Dept 2019]). The Court held that "[t]he provisions in the amended regulations that limit counsel fee awards for crime victims to administrative appeals and judicial review are inconsistent with the language and purposes of Executive Law article 22 and in excess of the authority of OVS"

(*id.* at 60). Noting that "Executive Law § 626 (1) requires OVS to reimburse crime victims for out-of-pocket loss, which '*shall* . . . include . . . the cost of reasonable attorneys' fees for representation before [OVS] and/or before the [A]ppellate [D]ivision upon judicial review,'" the Court determined that there is "no authorization in the statute's plain language for OVS to conclude that counsel fees are *never* 'reasonable' during the early stages of a claim and, thus, to categorically exclude awards of counsel fees for such representation in *every* instance" (169 AD3d at 57). The Court also concluded that the amended regulations conflict with another OVS regulation—9 NYCRR § 525.9 (d)—which "requires OVS to determine the reasonableness of a counsel fee award based upon specified factors," explaining that "[t]hese factors necessarily contemplate a case-by-case examination of the circumstances of each claim" (169 AD3d at 58), and rejected, as contrary to the record, OVS's assertion, based on the agency's experience, that the initial submission of a claim is a simple process (*id.* at 58-59).

II.

Neither party disputes the determination of the Appellate Division that Executive Law article 22 "requires OVS to reimburse crime victims for out-of-pocket loss, which '*shall* . . . include . . . the cost of reasonable attorneys' fees for representation before [OVS] and/or before the [A]ppellate [D]ivision upon judicial review'" (169 AD3d at 57, quoting Executive Law § 626 [1]). Their disagreement on this appeal concerns OVS's interpretation of the term "reasonable" as reflected in the amended regulations. We conclude that, as OVS argues, the directive in Executive Law § 623 (3) that OVS adopt "rules for the approval of attorneys' fees for representation before the office and/or before

the appellate division upon judicial review" must be read together with the provision that only attorneys' fees that are "reasonable" and "reasonably incurred" may qualify for reimbursement (Executive Law § 626 [1]), and that OVS's regulations rationally implement that statutory limitation.

Administrative agencies have "all the powers expressly delegated to [them] by the Legislature" (*Matter of Consolidated Edison Co. of N.Y. v Department of Envtl. Conservation*, 71 NY2d 186, 191 [1988]), and are "permitted to adopt regulations that go beyond the text of [their] enabling legislation, so long as those regulations are consistent with the statutory language and underlying purpose" (*Matter of Acevedo v New York State Dept. of Motor Vehs.*, 29 NY3d 202, 221 [2017]). While "an administrative agency may not, in the exercise of rule-making authority, engage in broad-based public policy determinations" (*Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib.*, 2 NY3d 249, 254 [2004], quoting *Rent Stabilization Assn. of N.Y. City v Higgins*, 83 NY2d 156, 169 [1993], *cert denied* 512 US 1213 [1994]), "[t]he cornerstone of administrative law is . . . the principle that the Legislature may declare its will, and after fixing a primary standard, endow administrative agencies with the power to fill in the interstices in the legislative product by prescribing rules and regulations consistent with the enabling legislation" (*Matter of Nicholas v Kahn*, 47 NY2d 24, 31 [1979]). As we have long recognized, "it is not necessary that the Legislature supply administrative officials with rigid formulas in fields where flexibility in the adaptation of the legislative policy to infinitely variable conditions constitute the very essence of the programs" (*id.*).

Stated differently, "where flexibility is required to enable an administrative agency to adapt to changing conditions, it is sufficient if the Legislature confers broad power upon the agency to fulfill the policy goals embodied in the statute, leaving it up to the agency itself to promulgate the necessary regulatory details" (*Matter of Consolidated Ed.*, 71 NY2d at 191). The standard for judicial review of those regulatory details "'is whether the regulation has a rational basis and is not unreasonable, arbitrary or capricious'" (*Matter of Acevedo*, 29 NY3d at 226, quoting *Matter of Consolation Nursing Home v Commissioner of N.Y. State Dept. of Health*, 85 NY2d 326, 331 [1995]). Where the legislature has left to an agency's discretion the determination of "what specific standards and procedures are most suitable to accomplish the legislative goals," the agency's rulemaking, "[i]f reasonably designed to further the regulatory scheme, . . . cannot be disturbed by the courts unless it is arbitrary, illegal or runs afoul of the enabling legislation or constitutional limits" (*Matter of Mercy Hosp. v New York State Dept. of Social Servs.*, 79 NY2d 197, 204 [1992])—regardless of our assessment of the "wisdom" of the agency's approach (dissenting op, at 10). The questions before us, then, are whether the amended regulations are inconsistent with the statutory text; and, if not, whether they are "'so lacking in reason' that they are 'essentially arbitrary'" (*Matter of Acevedo*, 29 NY3d at 226-227, quoting *Kuppersmith v Dowling*, 93 NY2d 90, 96 [1999]).

Here, petitioners' argument and the dissent's reasoning are flawed in that they overlook that the statute, when read as a whole, grants OVS the authority to determine whether attorneys' fees are "reasonable." Specifically, the legislature directed OVS to adopt rules for the approval of attorneys' fees for representation before it and the Appellate

Division (*see* Executive Law § 623 [3]). However, the statutory language also expressly states that reimbursable out-of-pocket loss "shall also include . . . the cost of *reasonable* attorneys' fees for representation before the office and/or before the [A]ppellate [D]ivision upon judicial review" (*id.* § 626 [1] [emphasis added]). Petitioners focus primarily on the language in the statute providing that OVS "shall" reimburse attorneys' fees, while concomitantly ignoring the statutory limitation that OVS reimburse such fees only if they are "reasonable." It bears emphasis that the statute itself—as opposed to OVS's own regulations—does not define the term "reasonable." Nor does the statutory scheme dictate any relevant factors that OVS must consider or set forth a rigid formula to be used in determining whether attorneys' fees are reasonable; rather, the legislature authorized and required OVS to determine what factors should be considered or what formula should be used—not simply how much to reimburse an attorney within the statutory limit of $1,000 (*cf. Matter of Regan v Crime Victims Compensation Bd.*, 57 NY2d 190, 195-196 [1982] [annulling an award on the ground that "serious financial hardship"—a term left to the Crime Victims Compensation Board to define—had not been established because the statute specifically required the Board to "consider all of the financial resources of the claimant," but the Board's rules exempted a wide variety of assets and income from consideration as part of claimant's financial resources]). Because Executive Law article 22 permits OVS to reimburse only fees that are "reasonable," but is silent with regard to the parameters of what is reasonable, the legislature necessarily granted OVS the authority to determine the scope of that term. In other words, the definition of the term "reasonable" was left to OVS's discretion.

Critically, the legislative silence regarding what constitutes a "reasonable" fee does not create a conflict between the statute and the agency's regulations.  Unlike the rules at issue in *Regan*, the regulations challenged here do not permit OVS to disregard any factors that the legislature has explicitly required it to consider.  Rather, the purpose of the amended regulations was to clarify which fees OVS would consider as falling within the meaning of the broad statutory term "reasonable," consistent with the statutory directive that OVS "adopt . . . rules for the approval of attorneys' fees for representation before the office and/or before the appellate division upon judicial review" (Executive Law § 623 [3]).  Petitioners and the dissent argue that attorneys' fees must be awarded based on case-specific factors, but they can point to nothing in the statute that requires OVS to determine all aspects of fee applications on a case-by-case basis.  Nor is there anything in the statutory language prohibiting OVS, in promulgating the challenged regulations, from making a categorical judgment that attorneys' fees incurred in connection with the initial claim stage are not "reasonable" within the meaning of Executive Law § 626 (1).  Inasmuch as the legislature left the definition of the term "reasonable" to OVS, the statute is silent as to how OVS is to address fees for the various stages of a claim,[1] and nothing in the statutory

---

[1] The lower courts disagreed on whether Executive Law § 623 (3) recognizes a distinction between "representation before OVS"—for which attorneys' fees may be recovered—and "assist[ing] claimants in the preparation of claims."  As Supreme Court observed, the language of section 623 (3) separately directs OVS to promulgate "rules for the approval of attorneys' fees for representation before the office" and "rules for the authorization of qualified persons to assist claimants in the preparation of claims for presentation to the office," implying that representation and preparation of claims for presentation are separate stages of the claim process.  The statute also requires OVS regulations to "provide for . . . written notification to an applying victim of their right to representation by counsel, as well as their potential eligibility for an award of attorneys' fees pursuant to [section 626 (1)]"

scheme prohibits OVS from deeming certain categories of fees unreasonable, the regulation does not conflict with the statute.[2] Further, it cannot be said that the agency "use[d] its enabling statute as a basis for drafting a code embodying its own assessment of what public policy ought to be" (*Matter of Acevedo*, 29 NY3d at 222 [internal quotation marks and citations omitted]) or contradicted the public policy embodied in the statutory scheme. Rather, OVS simply defined a term—"reasonable"—that the legislature directed it to define (*see Matter of Bernstein v Toia*, 43 NY2d 437, 440, 448 [1977] [upholding a DSS regulation fixing maximum, flat-grant shelter allowances without "making provision for exceptions due to circumstances peculiar to individual recipients" where the authorizing statute "itself [was] not explicit as to whether grants for shelter sh[ould] be fixed by the employment of flat grants or by special grants"]; *see generally Matter of Acevedo*, 29 NY3d at 220 [rejecting the argument that the Commissioner of the Department of Motor Vehicles

---

(*id.* § 627 [1] [a]). In providing that OVS need not notify a victim of the right to counsel until after an application has been filed, the statute again distinguishes between the initial application stage and representation before the office.

[2] Petitioners repeatedly argue that the question before this Court is one of pure statutory interpretation that turns only on an analysis of the "plain language" of the statutory terms. However, to the extent they argue that OVS's regulations are contrary to the *purpose* of the statute because they disincentivize attorneys from assisting crime victims, we note that attorneys' fees are available for services rendered to victims on administrative reconsideration—during which they may offer additional evidence, if their initial claim is denied or insufficient to support the maximum award permissible under law, or on matters such as any delays in filing, eligibility issues, and failure to supply proper forms—as well as on judicial review. The dissent's assertion that, "[i]f OVS has already denied a claim, that suggests that the claim has little chance of success or requires significant time and resources, likely exceeding the $1,000 statutory cap, and thus is not worth an attorney's effort" (dissenting op at 15) both lacks evidentiary support and represents the dissent's substitution of its own judgment for that of OVS—the agency that the legislature chose to administer the statute.

contravened a "statutory mandate to exercise discretion on a case by case basis by adopting hard and fast rules that are waivable only under limited circumstances" because the Commissioner was granted exclusive, discretionary authority over relicensing of certain individuals convicted of driving while intoxicated, and "the Commissioner d[id] not abdicate her discretion by formalizing it"]).

III.

In light of our conclusion that the amended regulations do not conflict with the statute, the question before the Court distills to whether OVS rationally determined that attorneys' fees for tasks such as preparing and submitting claim forms, or making telephone calls to ascertain the status of a claim, are not reasonable expenses (*see Matter of General Elec.*, 2 NY3d at 255). Petitioners argue that the amended regulations conflict with OVS's pre-existing regulation providing for the determination of counsel fee awards based on various case-specific factors (*see* 9 NYCRR § 525.9 [d]) and, thus, violate the instruction in Executive Law § 627 (1) that OVS "shall determine claims in accordance with rules and regulations promulgated by the director." In addition, petitioners and the dissent question the accuracy of OVS's description of the nature of the work involved in the initial application process, and petitioners argue that OVS is tacitly supporting an artificial "VAP bureaucracy" by discouraging victims from relying on independent attorneys.

The Appellate Division agreed with petitioners that the factors set forth in 9 NYCRR § 525.9 (d) "necessarily contemplate a case-by-case examination of the circumstances of each claim" and that the amended regulations conflict with this regulation because they "preclude[] such case-by-case consideration for fees incurred in the early stages of a claim,

determining the reasonableness of a fee award based *solely* upon the stage of representation when the fees were incurred—a factor that does not appear in the regulation" (169 AD3d at 58). However, OVS could rationally construe the new regulations as defining the types of services for which fees are not available and then apply the section 525.9 (d) factors to those stages of the process for which attorneys' fees are available (*see Andryeyeva v New York Health Care, Inc.*, 33 NY3d 152, 174 [2019] ["an agency's construction of its regulations if not irrational or unreasonable, should be upheld" (internal quotation marks and citations omitted)]). Such a construction does not conflict—and, indeed, comports—with section 525.9 (d) inasmuch as one of the factors that must be considered under that regulation is "the skill requisite to perform the legal service properly" (9 NYCRR § 525.9 [d] [1]). The new regulations act to clarify this factor by making explicit that reimbursement of attorneys' fees is not available for the initial filing of a claim because it is a relatively simple task, accomplished in most cases by the completion of a four-page form requesting basic information, and VAPs are available to assist claimants in any instance in which the initial claim process is more complicated.

Moreover, nothing in the statute prohibits OVS from changing its regulations prospectively or suggests that it cannot modify them in response to changing circumstances (*see Matter of Con. Ed.*, 71 NY2d at 191), as long as OVS determines individual claims in accordance with its current regulations (*see* Executive Law § 627 [1]). Those changing circumstances include the increased funding of hundreds of local VAPs, which are available to assist claimants in completing the initial form to submit a claim. Although the Appellate Division rejected OVS's consideration of the availability of VAPs (169 AD3d

at 60), we agree with OVS that it rationally refused to disregard the role that VAPs play in the claims process in determining that attorneys' fees for services rendered during the initial claim process or in the preparation of emergency applications cannot be deemed "reasonable" when VAPs exist in every county to provide assistance in the same manner (*see Matter of Acevedo*, 29 NY3d at 223 ["(b)alancing of costs and benefits is inherent in any rulemaking process, and . . . an agency would be acting irrationally if it adopted a particular rule without first considering whether its benefits justify its societal costs" (internal quotation marks and citation omitted)]. The questions of whether reimbursement for attorneys' fees is reasonable for the types of tasks involved in those stages of the process and whether VAPs are capable of adequately assisting claimants with such tasks are matters involving OVS's expertise and experience with the process, and OVS rationally relied on that experience in determining that requests for attorneys' fees in connection with those tasks are not "reasonable" within the meaning of the statute (*see Matter of Sigety v Ingraham*, 29 NY2d 110, 114 [1971] [upholding as rational regulations issued by the Commissioner of Health that limited Medicaid reimbursement rates to 50% of the weighted average adjusted in-patient cost at proprietary hospitals in the State based on the Commissioner's experience that efficiently run nursing homes will have costs below the regulatory 50% standard]).

Finally, the express purpose of Executive Law article 22 is to provide "aid, care and support for crime victims," not to promote economic activities and income for attorneys to enable them to render services that can be provided adequately by others trained and available to do so. OVS's regulations defining "reasonable" attorneys' fees represent an

attempt to conserve its resources for use in the compensation of losses suffered by crime victims, rather than for attorneys' fee awards it deemed unreasonable, consistent with the fundamental purpose of the statute, which is to provide "aid, care and support . . ., as a matter of grace, for . . . victims of crime" and their dependents (Executive Law § 620). Although there may be other valid ways in which OVS could have defined "reasonable" attorneys' fees, the definition in the amended regulations is rational and the application of those regulations to deny petitioners' fee applications was not arbitrary and capricious.

In short, because the regulations are consistent with the statutory language and OVS "appl[ied] its special expertise in a particular field to interpret [that] statutory language, [its] rational construction is entitled to deference" *(Matter of Raritan Dev. Corp. v Silva*, 91 NY2d 98, 102 [1997]).  Accordingly, the order of the Appellate Division should be reversed, without costs, and the judgment of Supreme Court reinstated.

WILSON, J. (concurring):

I agree with the majority's conclusion that the amended regulations of the Office of

Victim Services (OVS), which limit the reimbursement of attorneys' fees to those incurred

during administrative review of crime victims' claims and judicial review of OVS's

decisions, are consistent with the agency's governing statute and are a rational exercise of the agency's discretion. I write separately because, as I interpret the relevant sections of the Executive Law, this case is very simple. In short, Executive Law § 626 is purely a definitional section, as its title indicates ("Out of pocket loss; definition"). Nothing in that section compels or authorizes OVS to take any action; the section merely defines "out-of-pocket loss" to include a specified set of expenses and indebtedness. One must look elsewhere for OVS's statutory authorization to pay claims, which is most clearly found in subsections (3) and (5) of Executive Law § 623. Subsection 623 (3) grants OVS very broad discretion to promulgate rules for victim compensation, and contains no requirement that OVS make awards for any particular component(s) within the definition of "out-of-pocket loss."

Article 22 of the Executive Law, which governs OVS, is laid out in a straightforward way. As the majority states, OVS's role is to effectuate "the legislature's intent that aid, care and support be provided by the state, as a matter of grace, for . . . victims of crime" and their dependents (Executive Law § 620). Section 623, entitled "Powers and Duties of the Office," unsurprisingly begins: "The office shall have the following powers and duties," after which follows a list of 23 powers and duties. Someone wanting to know what powers and duties OVS has should look to section 623, not section 626, which is solely devoted to providing a definition of a single term, "out-of-pocket loss.".

Most relevant here is subsection 623 (3), which awards OVS the power:

> "To adopt, promulgate, amend and rescind suitable rules and regulations to carry out the provisions and purposes of this article, including rules for the determination of claims, rules for the approval of attorneys' fees for representation before the office and/or before the appellate division upon judicial review as provided for in section six hundred twenty-nine of this article, and rules for the authorization of qualified persons to assist claimants in the preparation of claims for presentation to the office."

The only constraint placed on OVS's power to promulgate rules is that they be "suitable . . . to carry out the provisions and purposes of this article." That suitability is plainly a matter of discretion, to which courts owe deference (*see Matter of Acevedo v New York State Dept. of Motor Vehs.*, 29 NY3d 202, 221 [2017] ["(A)n agency is permitted to adopt regulations that go beyond the text of its enabling legislation, so long as those regulations are consistent with the statutory language and underlying purpose"]). For the reasons amply set out by the majority, OVS's rules restricting attorneys' fees are not irrational. I further note that subsection 623 (3), by providing that OCS is empowered to develop rules for attorneys' fees for representation before OVS "and/or" before the Appellate Division, strongly suggests that the legislature did not compel OVS to provide for both, but instead gave it great flexibility to determine under what circumstances to allow fee awards.

Executive Law § 626 is purely a definitional section. It does not require or empower OVS to do anything at all.[1] Much of the confusion comes from not properly

---

[1] I agree with the majority that the statute does not define "reasonable attorneys' fees" and does not expressly say how OVS is to determine a fee's reasonableness. However, as I interpret the statute, neither of those observations matters to the resolution of this appeal. Because "reasonable attorneys' fees" is placed within the definitional section and subsection 623 (3) grants OVS broad authority to determine which items to compensate and how, OVS's rules regarding attorneys' fees are rational and consistent with the overall statutory purpose. With the two limited exceptions I identify below, the statute

parsing the word "shall" in that section. The section does not say that OVS "shall" award anything at all; instead, it says that the words "Out-of-pocket loss *shall mean* unreimbursed and unreimbursable expenses reasonably incurred for medical care or other services necessary as a result of the injury upon which such claim is based . . . . *Such expenses or indebtedness shall include* the cost of counseling . . . [and] *shall also include* the cost of residing at or utilizing services provided by shelters for battered spouses and children who are eligible . . . , and the cost of reasonable attorneys' fees for representation before the office and/or before the appellate division upon judicial review not to exceed one thousand dollars" (Executive Law § 626 [1] [emphases added]). Thus, all subsection 626 (1) does is list the items that shall be included in the definition of "out-of-pocket loss."[2]

---

contains no mandate requiring OVS to reimburse crime victims for any expense listed within the definition of "out-of-pocket loss" in section 626.

[2] When a definitional clause in a statute uses the phrase "shall include," courts construing the statute sometimes confront a question about whether the word "include" is "used as a word of extension or enlargement rather than as one of limitation or enumeration" (*American Surety Co. of New York v Marotta*, 287 US 513, 517 [1933] [citing cases interpreting the phrase "shall include" in the context of different definitional statutes]). That is, when a statute provides that the meaning of a given term "shall include" certain enumerated items, courts may have to decide whether the definition excludes items not listed, or whether the word "include," in context, is "used to expand, not to restrict" the definition of the term (*id.*). In the instant case, we are not presented with a question about whether the definition of "out-of-pocket loss" excludes any cost not listed in Executive Law § 626 (1), or whether "shall include" is used to describe the minimum set. That alternate possibility—that "shall include" might imply extension, not limitation, of the set of expenses included in "out-of-pocket loss"—would not alter my conclusion in this case because, if anything, it would further broaden OVS's discretion to determine what expenses to compensate.

That definition serves as a limit on the types of losses for which OVS may award compensation, but does not compel OVS to provide compensation for them if, in OVS's discretion, the purposes of the statute would be better served by compensating subsets of those types of losses.  Further support for that conclusion is found in subsections (3) and (3-a) of Executive Law § 631, in which the legislature required that, for losses of earnings, support or savings, the award must be equal to the loss sustained (subject to dollar amount caps stated elsewhere), but it did not restrict OVS's ability to award less than the actual loss sustained for any other type of out-of-pocket loss.  If OVS were required to grant awards for every type of expense included in the definition of "out-of-pocket loss," that command would have to appear somewhere else in the statutory scheme.  However, as to attorneys' fees the statute contains no provision comparable to those found in subsections 631 (3) and (3-a).  Nothing in the statute provides textual support for the view that OVS is obligated to pay reasonable attorneys' fees incurred at every stage of representation.[3]

Thus, I interpret the phrase "shall . . . include" in subsection 626 (1) very differently from the Appellate Division, which read that language as "mandat[ing] the inclusion of

---

[3] Indeed, other OVS regulations, not at issue in this case, establish categorical rules—not compelled by the terms of the statute itself—that limit the availability of other types of expenses included in the definition of "out-of-pocket loss."  For example, although Executive Law § 626 (1) does not specify any temporal limit on the counseling costs included in the definition of compensable losses, OVS regulations set conditions for the availability of awards for counseling costs when a claimant seeks compensation more than a year after counseling has begun and when a claimant seeks compensation for counseling provided over a six-month period or longer (*see* 9 NYCRR 525.12 [g] [4], [6]).

reasonable counsel fees in awards for out-of-pocket loss," with no permissible limit other than the $1,000 cap (169 AD3d 52, 58 [3d Dept 2019]).  Executive Law § 626 (1) defines a set of expenses and indebtedness that are eligible for compensation as out-of-pocket losses; it does not by its own terms mandate that OVS grant requests for compensation of all the expenses listed in that set, nor does it constrain OVS's authority to impose categorical limits on the compensation of those expenses.  In other words, the statute enables OVS to compensate crime victims for expenses listed within the definition of "out-of-pocket loss," but does not itself command OVS to pay every listed expense for which a claimant could receive compensation.

So long as OVS's rules do not conflict with the authorizing statute and are not irrational, they must be upheld (*see Acevedo*, 29 NY3d at 221, 226).  Accordingly, I concur with the majority's conclusion that OVS's amended regulations fall within its statutory authority, and I fully join the majority's reasoning as to the rationality of the regulations.

RIVERA, J. (dissenting):

Under our system of government, the legislature—as the representative body of the People—enacts laws that reflect policy choices (*Boreali v Axelrod*, 71 NY2d 1, 13 [1987]). While the legislature cannot delegate its exclusive lawmaking power, it may grant

regulatory oversight to an agency through statute, so long as it identifies the public policy that the agency is supposed to promote and articulates sufficient guidance regarding the agency's proper exercise of its authority (*Matter of Levine v Whalen*, 39 NY2d 510, 515 [1976]; *Matter of Nicholas v Kahn*, 47 NY2d 24, 31 [1979] ["(A)dministrative agencies are but creatures of the Legislature and are possessed only of those powers expressly or impliedly delegated by that body"]). Thus, as a foundational tenet of administrative law, an agency cannot act in contravention of its enacting legislation, for example by expanding the scope of its authority (*Nicholas*, 47 NY2d at 31; *Kuppersmith v Dowling*, 93 NY2d 90, 96 [1999]; *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]; *Matter of Jones v Berman*, 37 NY2d 42, 53 [1975]).

At issue on this appeal is the Office of Victim Services' ("OVS") interpretation of Executive Law Article 22. The law allows reimbursement for "reasonable attorneys' fees for representation before the office and/or before the [A]ppellate [D]ivision upon judicial review not to exceed" $1,000 (Executive Law § 626 [1]). There is no limitation on the type or rate of legal assistance reimbursable under the statute. Beyond the statutory cap, the only statutory limitation is that the fees must be "reasonable." Thus, OVS is limited to determining what is reasonable in a particular claimant's case.

Nevertheless, by regulatory fiat, OVS has denied reimbursement for an entire class of legal work. Under OVS's current regulations, only claimants who appeal the denial of their applications are entitled to attorneys' fees. These regulations are ultra vires and should be annulled.

Contrary to the majority's conclusion, the categorical denial of attorneys' fees for legal work in filing a claim is not a permissible exercise of agency discretion under Executive Law Article 22. In fact, it involves no exercise of discretion at all. As OVS concedes, the regulation is a per se rule, precluding OVS's accommodation of fee requests, regardless of an individual claimant's circumstances. Moreover, because the regulations are intended to discourage attorneys from assisting claimants with their initial claim requests, the regulations undermine the legislative goal, embodied in the Executive Law, of encouraging legal representation of claimants seeking reimbursement for out-of-pocket losses caused by crime. The legislature did not authorize OVS to effectively deny attorneys' fees to the majority of crime victims and their families. I dissent.

## I.

"The cornerstone of administrative law is derived from the principle that the Legislature may declare its will, and after fixing a primary standard, endow administrative agencies with the power to fill in the interstices in the legislative product by prescribing rules and regulations consistent with the enabling legislation" (*Nicholas*, 47 NY2d at 31). "In so doing, an agency can adopt regulations that go beyond the text of that legislation, provided they are not inconsistent with the statutory language or its underlying purposes" (*Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals Tax Appeals Trib.*, 2 NY3d 249, 254 [2004]; *see also Kuppersmith*, 93 NY2d at 96; *Goodwin v Perales*, 88 NY2d 383, 395 [1996]; *Matter of City of New York v State of N.Y. Commn. on Cable Tel.*, 47 NY2d 89, 92-93 [1979]). But if "the question is one of pure statutory reading and

analysis," we do not defer to the agency's statutory interpretation (*Kurcsics*, 49 NY2d at 459).

Of course, "[w]hen presented with a question of statutory interpretation," this Court's "primary consideration is to ascertain and give effect to the intention of the Legislature" (*Yatauro v Mangano*, 17 NY3d 420, 426 [2011] [internal citations and quotation marks omitted]). "[T]he starting point for accomplishing this is the statute's language" (*Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270, 286 [2009]). This Court interprets the text "according to its natural and obvious sense, without resorting to an artificial or forced construction" (McKinney's Cons Laws of NY, Book 1, Statutes § 94; *see also Samiento v World Yacht Inc.*, 10 NY3d 70, 78 [2008]). The "standards prescribed by the Legislature are to be read in light of the conditions in which they are to be applied" (*Nicholas*, 47 NY2d at 31). Moreover, in determining the scope of the animating legislation, it is "necessary . . . to examine" the legislation's "purpose[,] . . . factual background and history" (*id.* at 32).

Administrative agency regulations must be upheld if they are supported by a "rational basis" and are not "unreasonable, arbitrary, capricious or contrary to the statute under which [they] are promulgated" (*Kuppersmith*, 93 NY2d at 96). To the extent that regulations "conflict" with an animating statute, "they are invalid" (*Matter of Regan v Crime Victims Compensation Bd.*, 57 NY2d 190, 196 [1982]).

II.

It is the policy of this State to provide financial assistance to crime victims and their families for certain expenses (Executive Law §§ 620 and 626 [1]). Executive Law § 626 (1) provides that "out-of-pocket loss shall" include "the cost of reasonable attorneys' fees for representation before the office [of victim services] and/or before the appellate division upon judicial review not to exceed one thousand dollars." In accordance with Executive Law § 623 (3), OVS is empowered to "adopt, promulgate, amend, and rescind suitable rules and regulations" including "rules for the approval of attorneys' fees." The statute also provides that the claims process shall accord with the Director's rules and regulations, and that OVS must provide written notification to an applicant of their right to counsel and reasonable attorneys' fees (Executive Law § 627 [1] [a]).[1]

Pursuant to this legislative authorization, OVS enacted 9 NYCRR 525.9. As relevant here, the 2015 version declared that parties had "the right to be represented before the office, at all stages of a claim, by an attorney." It also allowed that, "[w]henever an award [was] made to a claimant who [was] represented by an attorney," OVS "shall approve a reasonable fee commensurate with the services rendered, up to $1,000" (9 NYCRR 525.9 [c] [prior version]).

---

[1] OVS does not argue on this appeal that the legislature intended to limit attorneys' fees to legal work done after the initial submission of the claim application. In other words, OVS does not argue that the specification in Article 22 to "representation before [OVS]" means appearances after an OVS determination on the claim, such as requests for reconsideration. The majority's reliance on this language is misplaced (majority op at 11 n 2). Therefore, I see no reason to consider whether the statutory language supports limiting attorneys' fees in that way on this appeal.

The regulation announced the following nonexclusive list of factors "to be considered in determining the reasonableness of a fee":

> "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the fee customarily charged in the locality for similar legal services;
>
> (3) the amount involved and the results obtained;
>
> (4) the time limitations imposed by the client or by the circumstances;
>
> (5) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (6) whether any part of the cost of the legal service provided to the claimant has been paid or is payable by a third party" (9 NYCRR 525.9 [d]).

In 2016, OVS amended its regulation to its current form, which limits reimbursement to attorneys' fees incurred during: (1) administrative review of the victim's claims and (2) judicial review of OVS's final decision (9 NYCRR 525.9 [a]; *see also* 9 NYCRR 525.3 [h] [defining "reasonable attorneys' fees for representation before the office and/or before the appellate division upon judicial review" for purposes of Executive Law Article 22]). According to OVS, the amendment was intended to prevent victims from obtaining reimbursement for attorneys' fees incurred for work preparing and filing claims. The factors listed in 9 NYCRR 525.9 (d) to be considered in determining whether attorneys' fees are reasonable remain unchanged but are available only to victims who appeal an adverse determination.

OVS also deleted its statement that claimants' have a "right" to representation at each stage of the claim process. The regulation now reads that a victim "may choose to be represented before the office, at any stage of claim, by an attorney" (9 NYCRR 525.9 [a]). The regulation also instructs that OVS "may approve"—as opposed to "shall approve"— "a reasonable fee commensurate with the services rendered, up to $1,000" (9 NYCRR 525.9 [c]).

OVS contends that it provides federal and state funds to Victim Assistance Programs ("VAPs") by means of grants and contracts, in part, to assist victims with the claim submission process. It also indicates that a claimant may submit their request by means of an online form, which OVS claims is easily completed by someone without legal training. OVS further represents that VAPs assist claimants in 85% of filings.

As detailed in the OVS Annual Reports, the principal reason that OVS rejects claims is for lack of documentation. Nowhere in the Reports—and OVS has made no such representation in the course of this litigation—does the data establish that any victim has been denied a claim due to lack of OVS funds.

### III.

The legislative purpose of Executive Law Article 22 is to provide funds, within statutory limits, to victims and their families for certain costs incurred as a result of crime (Executive Law § 620). The statute defines those costs as expressly including reasonable attorneys' fees. The statute thus leaves no room for OVS to determine whether legal fees are reimbursable. The only authority rendered to OVS is to determine how much to

reimburse within the statutory limit. In other words, the legislature has decided, as a policy matter, to reimburse legal fees; the agency's sole discretion is to determine what constitutes a "reasonable" fee (Executive Law §§ 620; 623).

Here, OVS did not exercise discretion in deciding what constitutes a reasonable fee; it did not consider the relevant factors, such as whether the work was legal in nature or the proper rate of reimbursement. Instead, OVS adopted a per se rule that reimbursement of legal fees is *only* reasonable for work during an administrative appeal and upon judicial review. This no-exceptions-ever approach cannot be squared with the Executive Law, which mandates reimbursement up to the $1,000 cap.

The majority argues unpersuasively that OVS acted within the scope of its authority in adopting a categorical exclusion because the legislature did not define "reasonable," thus leaving it to OVS to determine what is reasonable (majority op at 8-9).[2] The majority is correct that the statute authorizes OVS to determine what is a reasonable fee in accordance with enumerated factors adopted by OVS, but that does not answer the question of whether the statute also permits the categorical exclusion adopted by OVS. Put another way, the question before us is whether OVS may fill "the interstices in the legislative product" by

---

[2] There is no textual support for reading the Executive Law in the way that the majority has, which amounts to the legislature granting unfettered authority to OVS to decide whether to reimburse fees. In the exercise of its lawmaking power, the legislature has mandated reimbursement of "reasonable attorneys' fees" (Executive Law § 626 [1]). Accordingly, OVS cannot disregard that portion of the statute and refuse to reimburse a reasonable fee request within the statutory cap. Nor can OVS effectively achieve the same result by adopting a categorical rule that denies reimbursement to all claimants for legal assistance in determining whether to apply and how best to present their claims.

excising an entire class of private legal services without consideration of the factors, or is OVS's authority limited to deciding whether the service was reasonable under the circumstances and what rate of reimbursement within the statutory cap is appropriate and fair. Because the legislature has determined that fees shall be reimbursed so long as they are reasonable, the statute tolerates only the latter interpretation.

The majority's fixation on the lack of a definition of "reasonable" reveals a misunderstanding of the authorization granted to OVS in the statute and the legislative intendment for the proper exercise of administrative discretion. "Reasonable attorneys' fees" is a term of art, known to the legislature and regularly construed by courts (*see e.g.* Education Law § 6309 [2]-[3]; Public Officers Law § 19 [2]-[3]; General Business Law § 538-a; 35 USC § 285; 16 USC § 2632 [a] [1]; 2 USC § 396). A "reasonable" fee is what is fair and appropriate based on the facts and circumstances of an individual case. OVS has recognized as much, as reflected in the factors that it adopted in 9 NYCRR 525.9 (d) to determine what is reasonable, which are the same factors commonly used throughout the country and by this Court (*see e.g.* Black's Law Dictionary [11th ed 2019] attorney's fee, citing Model Rule of Prof. Conduct 1.5 [2005]; *Hensley v Eckerhart*, 461 US 424, 430 n 3 [1983]; *In re Freeman's Estate*, 34 NY2d 1, 9 [1974]; *Riley v City of Jackson, Miss.*, 99 F3d 757, 760 [5th Cir 1996]; *Barber v Kimbrell's, Inc.*, 577 F2d 216, 226 [4th Cir 1978], citing *Johnson v Georgia Highway Exp., Inc.*, 488 F2d 714, 717-719 [5th Cir 1974]; *Stratos v Department of Pub. Welfare*, 387 Mass 312, 320-325, 439 NE2d 778, 785-87 [1982]; *Woude v First Midwest Bank*, 45 NE3d 847, 852 [Ind Ct App 2015]; *Steiger v J.S. Builders,*

*Inc.*, 39 Conn App 32, 38, 663 A2d 432, 435 [1995]). As these factors illustrate, what constitutes a reasonable fee is a fact-specific determination and does not lend itself to the kind of categorical exclusion adopted by OVS and upheld by the majority.

The wisdom of a case-by-case approach is demonstrated by petitioner Michelle Soriano's emergency application. In addition to filing a claim for an award for damaged property, Soriano—in fleeing a domestic abuser who had repeatedly violated orders of protection—filed an emergency application for moving expenses with the assistance of an attorney. She attached twenty-three supporting enclosures to her application. These included police reports, copies of each of the violated orders of protection, and a Department of Housing and Urban Development certification of domestic violence. OVS granted the emergency application.

Under the OVS regulation, upheld by the majority here, Soriano would not be able to seek reimbursement for attorneys' fees accrued for work done preparing and filing her emergency application. The majority insists that in relatively complex cases like Soriano's emergency application, claimants should make their best effort in filing claims by themselves or through VAPs. According to OVS, claimants should only hire an attorney if the claim is rejected in order to rectify any failures in the submission on administrative review or appeal (majority op 11 n 2). But Soriano's emergency application appears to have been time sensitive. Her best chance in obtaining potentially life-preserving relief quickly was through the help of an attorney dedicated to her case. The majority accepts OVS's conclusion that any fee for Soriano's emergency application was per se

unreasonable. But under the factors OVS uses to determine reasonable attorneys' fees—used throughout the country and by this Court——at least some award was reasonable for the work done in filing Soriano's emergency application.

In any case, a claimant might also need legal assistance with providing the information and documentation requested in the OVS online form. For instance, the form requires a claimant to explain the reason for delay in filing. Further, OVS instructs claimants to file a number of supporting documents with their submissions, and attorneys could help claimants identify and collect the proper forms.

The OVS regulation also fails to allow fees for legal help with eligibility issues that precede filing and that might influence what is included with a submission or whether to make a submission at all. For example, whether the victim of a crime "contributed" to the injury that they suffered influences a claimant's award (*see e.g. Matter of Cox v OVS*, 110 AD3d 797, 798 [2d Dept 2013] [reversing OVS's determination that a victim, who was alleged by police to have been a drug dealer, had "contributed" to his homicide under Executive Law § 631 (5) (a), thus reducing his mother's award for funeral expenses]). In fact, whether someone was actually the "victim of a crime" at all is not always clear (*see e.g. Matter of Muscatello v New York State Crime Victims Bd.*, 289 AD2d 789,790 [3d Dept 2001] [claimant who suffered a heart attack following a burglary was not a "victim of a crime" under Executive Law § 624 (1) (a)]).

Even if most claimants are able to fill out and file the form on their own, or with some guidance from a VAP, OVS fails to account for those cases when legal assistance is

required to ensure a claimant receives the maximum award permissible under the law. A cursory reading of the statute and the regulations makes plain that assessing an award amount can be complicated (*see e.g.*, *Matter of Pelaez v State of N.Y. Exec. Dept. Crime Victims Bd.*, 186 AD3d 831, 833 [3d Dept 2020] [affirming the denial of a claimant's application in part because his paystubs listed two different social security numbers, and thus his claim failed to demonstrate that he reported his income to the appropriate tax authority under 9 NYCRR 525.8 (b)]; *Matter of Starkman v Fischetti*, 252 AD2d 845, 846 [3d Dept 1998] [finding that the claimant had not suffered a loss of earnings under Executive Law § 631 (3) because she was unemployed at the time of her crime-related injury, despite the fact that she submitted evidence that she had been offered a job before the injury but was unable to start because of the injury]; 1983 Ops Atty Gen No. 83-F2 [opining that life insurance payments should not reduce a claimant's award because they are not reimbursements for an out-of-pocket expense, unlike health insurance, but that life insurance benefits should be considered in determining whether a claimant has suffered financial hardship under Executive Law § 631]). These examples belie the majority's argument that the legislature authorized OVS to limit legal fees to claimants who seek administrative reconsideration or appear before the Appellate Division.[3]

---

[3] Notably, OVS fails to argue that the VAPs provide legal assistance in filling out and filing the form. And, as the above examples demonstrate, legal assistance may be necessary to successfully complete the claim-filing process. Thus, OVS is unpersuasive in arguing that the VAPs render legal fees an unreasonable cost of submitting a claim.

The majority's reliance on *Matter of Acevedo v New York State Dept. of Motor Vehs.* (29 NY3d 202 [2017]) and *Matter of Sigety v Ingraham* (29 NY2d 110 [1971]) is misplaced. Both cases support petitioners here. In *Acevedo*, the controlling statute provided for license revocation and authorized the New York State Department of Motor Vehicles Commissioner to exercise discretion in adopting post-revocation standards (29 NY3d at 213-214). Here, the statute does not grant OVS discretion to deny reasonable attorneys' fees. And while in *Acevedo* we rejected the challenge to the Commissioner's hard-and-fast rules, the challenged regulations authorized the Commissioner to "deviate from the general policy" in light of "'unusual, extenuating and compelling circumstances'" (*id.* at 216 [internal citations omitted]). Here, OVS does not allow for any deviation from the regulation—no fees are reimbursed regardless of the complexity or nature of the filing.

*Sigety* similarly fails to support the majority's holding. *Sigety* involved a challenge to the Commissioner of Health's regulation limiting Medicaid reimbursements to 50% of the average daily cost of proprietary hospital care (29 NY2d at 113-115). In that case, the relevant statute authorized the adoption of administratively determined reimbursement rate schedules. The statute did not require individual assessments but rather the Commissioner's certification that the rate schedules were reasonably related to the service's costs (*id.* at 112-113). Thus, the legislative scheme mandated uniform rates based on comparisons to costs within the industry. The Commissioner's 50% rate was in accordance with that scheme.

The regulation at issue here did not set a reimbursement rate for specific types of legal work. OVS deemed legal work associated with submitting a claim unnecessary by setting the reimbursement rate for that work at zero, without exception. That is not an exercise of discretion. Instead, OVS's Director made a policy choice not to pay for private legal services at the filing stage. That determination exceeded OVS's administrative authority.

In both *Acevedo* and *Sigety*, the regulations accorded with the policies and directives set forth in the respective statutes. In *Acevedo*, the regulations denying reissuance of a license furthered the policy to protect the public against drunk drivers (29 NY3d at 213-214). In *Sigety*, the 50% rate cap furthered the policy of containing Medicaid costs unrelated to the relevant health care service (29 NY2d at 114-115). In contrast, the OVS regulation *contradicts* the public policy of providing financial support to crime victims and their families. The law as written does not authorize OVS to make the policy choice to discourage private sector lawyers from assisting victims and their families in return for reasonable fees.

Significantly, the regulation also discourages representation in complex cases, and even during the stages of the claim process at which OVS recognizes that attorneys' fees are reasonable. OVS only acknowledges the reasonableness of attorneys' fees in cases in which the agency has in the first instance denied a claim. And claimants are only entitled to reimbursement if their claims are successful (9 NYCRR § 525.9 [c]). If OVS has already denied a claim, that suggests that the claim has little chance of success or requires

significant time and resources, likely exceeding the $1,000 statutory cap, and thus is not worth an attorney's effort.[4]

OVS asserts, and the majority agrees, that reimbursing lawyers for work related to submitting claims leaves less money for claimants and that the Executive Law was not intended to channel OVS's limited funds to lawyers for work that could be done by VAPs. This argument lacks any evidentiary support. OVS has failed to identify a single claim that it has rejected because it lacked the funds to compensate the claimant. Nor has OVS quantified what it allocates to VAPs for claim filing services, nor said whether this is actually less costly than reimbursing attorneys up to the $1,000 cap per filing.

Regardless, if OVS thinks that its limited funds are better spent in ways other than reimbursing attorneys for reasonable fees incurred during early-stage work, then its recourse is to make its case to the New York State Legislature and obtain an amendment to the Executive Law.[5] That may be a reasonable position, given current federal funding of

---

[4] The majority claims that this position "both lacks evidentiary support and represents the dissent's substitution of its own judgment for that of OVS—the agency that the legislature chose to administer the statute" (majority op at 11 n 2). But OVS quite correctly assumes that, by completely denying attorneys' fees for a class of work, its regulation discourages attorneys from representing victims. I then state the obvious: discouraging attorneys undermines the legislative choice to increase access to the private bar embodied in the command that OVS reimburse reasonable attorneys' fees. It is the majority, not I, that has made a judgment call as to the better policy. It is the majority, not I, that disapproves of the legislative choice in Article 22 as essentially an unnecessary stream of income for attorneys (majority op at 14-15).

[5] It would not be the first time that the legislature was persuaded by an agency's view. For example, before *Sigety* was decided, the legislature approved the Commissioner's interpretation of the statute governing Medicaid reimbursements by amending it to only require reimbursement for rates "related to the costs of the *efficient production*" of nursing home services (*Sigety*, 29 NY2d at 115 n 4 [emphasis in the original]). That is how the

VAPs, but how best to spend the money and whether only certain private legal assistance should be reimbursed are policy choices left to the legislature.

## IV.

In sum, the legislature has determined and expressed through the Executive Law that reasonable attorneys' fees for victims and their families are reimbursable in an amount not to exceed the statutory cap. To effectuate that policy, the legislature granted OVS authority to adopt rules for the approval of those fees. OVS exceeded that authority when it amended its regulation to categorically deny fees for legal assistance with the claims-submission process, regardless of the specifics of the claim, and without consideration of the traditional reasonableness factors that OVS *itself* has adopted in its regulations. I would affirm the Appellate Division because the OVS regulation should be annulled as ultra vires. Therefore, I dissent.

Order reversed, without costs, and judgment of Supreme Court, Albany County, reinstated. Opinion by Judge Stein. Chief Judge DiFiore and Judges Garcia and Feinman concur. Judge Wilson concurs in result in an opinion. Judge Rivera dissents and votes to affirm in an opinion in which Judge Fahey concurs.

Decided February 18, 2021

---

system should work; not as here with an agency implementing a policy choice that contradicts the plain language of its animating statute.